IN RE: IAN CHRISTOPHER BRADSHAW, A MINOR CHILD

No. COA02-1325

(Filed 21 October 2003)

**1. Trials— inadequate recordation—failure to show prejudice**

Respondent father has not shown he was prejudiced for the purpose of receiving meaningful appellate review in a termination of parental rights case by the inadequate recording of the proceedings on 27 March 2000, because: (1) respondent made no attempt to reconstruct the evidence and makes only general allegations of prejudice in his brief; and (2) a review of the transcript indicated that much of the missing testimony was clearly referenced and repeated by the witnesses, including respondent, when the hearing continued on 28 March 2000. N.C.G.S. § 7B-806.

**2. Termination of Parental Rights— neglect—failure to provide financial support—failure to convey love or affection**

The trial court did not err by terminating respondent incarcerated father's parental rights to his minor child based on neglect, because: (1) respondent neither provided support for the minor child nor sought any personal contact with or attempted to convey love or affection for the minor child; (2) respondent never inquired about the minor child in his infrequent correspondence with petitioner mother; (3) although respondent claimed that he drew pictures of Disney characters on some of his letters to petitioner for the purpose of entertaining the minor child, respondent

admitted having sent his last letter to petitioner sometime in 1998; and (4) there was only one telephone call by respondent to petitioner which was in September 1999.

Appeal by respondent father from orders dated 8 May 2000 by Judge Charlie E. Brown in Rowan County District Court. Heard in the Court of Appeals 10 September 2003.

*J. Stephen Gray for petitioner-appellee.*

*Katharine Chester for respondent-appellant.*

BRYANT, Judge.

Kevin Andre Rankin (respondent) appeals an "order as to grounds for termination of parental rights" and an "order for the termination of parental rights" dated 8 May 2000 terminating respondent's parental rights to his now five-year-old son (the minor child).

On 27 September 1999, Amy Lynne Bradshaw (petitioner), the mother of the minor child, petitioned the district court to terminate respondent's parental rights based on N.C. Gen. Stat. § 7B-1111(a)(1) (neglect), § 7B-1111(a)(6) (incapability to provide proper care and supervision due to substance abuse), and § 7B-1111(a)(7) (willful abandonment). An adjudication and dispositional hearing was scheduled for 27 and 28 March 2000, at which petitioner, her mother, and respondent testified. Certain words during their testimony are not recorded in the transcript of the hearing because they were inaudible. In addition, respondent's March 27 testimony is missing completely from the transcript, as the tape that was supposed to record the afternoon session of the hearing was apparently not turned on, and only his March 28 testimony is available for review.

The trial court entered an "order as to grounds for termination of parental rights" finding in pertinent part:[1]

3. The minor child was born in Salisbury, Rowan County, North Carolina, and his date of birth is May 6, 1998.

4. . . . [R]espondent is currently incarcerated in the Department of Corrections at Mountain View Correctional Facility, where he is serving a sentence as a[] Habitual Felon[] of not less than eighty months, and not more than one hundred [and] five months. . . . [R]espondent's earliest release date is March 2004.

---

1. These findings are supported by the testimony available in the transcript.

5. . . . [R]espondent is employed on the maintenance crew at Mountain View Correctional Institute, where he works five days per week, and he is paid money as a result of this job. . . . [R]espondent has at his disposal income in the amount of $5.00 per week.

. . . .

7. . . . [R]espondent testified that he has failed to provide any financial aide [sic], at any time to . . . petitioner, for the use, benefit, and support of [the minor child] since the birth of the minor child.

8. . . . [R]espondent testified that he is using the income he receives as a result of working inside the prison system for his own personal cosmetics and his day[-]to[-]day toiletries.

9. . . . [R]espondent acknowledged, by way of his testimony, that he has seen the minor child . . . [on] no more than six occasions, and at all times while . . . respondent was in the Rowan County Detention Center awaiting trial for the charges for which he is currently serving time. . . . [R]espondent has been in the Department of Corrections serving time on his current sentence[] since March 1998.

. . . .

14. . . . [R]espondent admitted that he has been addicted to drugs.

. . . .

16. . . . [R]espondent has largely been unemployed for the two years prior to his incarceration, except for two weeks when he worked for a temporary agency in 1997.

17. . . . [R]espondent has a history of assaulting . . . petitioner prior to and during her pregnancy.

. . . .

25. . . . [R]espondent testified that [in] approximately September 1999, he called . . . petitioner by telephone, and during that telephone call, he asked about the minor child . . . .

26. . . . [R]espondent admits that the last letter he sent to . . . petitioner was in 1998. Correspondence received by . . . petitioner from . . . respondent after his incarceration focused on the rela-

tionship between . . . petitioner and . . . respondent[] and did not address issues concerning the minor child. In addition to the correspondence concerning the parties' relationship, the letters may have included drawings of Mickey Mouse and Minnie Mouse, which . . . respondent indicates were for the sole purpose of entertaining the minor child.

27. The [trial] court could not find as a fact when . . . respondent sent the last correspondence to . . . petitioner, in that[] respondent did not recall. All the believable evidence was that the correspondence was infrequent.

28. . . . [T]he family of . . . respondent has not contacted . . . petitioner to inquire about the minor child . . . although . . . respondent has a number of family members that reside in Salisbury. . . .

29. Acknowledging that . . . respondent has been incarcerated continually since the minor child's birth, nevertheless, the [trial] court finds that . . . respondent has willfully conducted himself in a way that indicated a desire to relinquish his rights [to] the minor child . . . .

30. . . . [R]espondent has withheld his care, love and affection to the minor child, and his failure to provide care, love and affection to the minor child has been willful.

Based on these findings, the trial court concluded that grounds for termination of parental rights existed under N.C. Gen. Stat. § 7B-1111(a)(1) (neglect) and (7) (willful abandonment). Further concluding that it was in the minor child's best interest, the trial court, through its "order for the termination of parental rights," thereafter terminated respondent's parental rights.

---

The issues are whether: (I) respondent was prejudiced, for purposes of receiving meaningful appellate review, by the inadequate recording of the proceedings and (II) the trial court's findings support its conclusion of neglect and willful abandonment.

I

[1] Respondent argues that the missing testimony in the transcript prejudiced him in that it foreclosed meaningful appellate review in this case and therefore warrants remand for a new hearing. We disagree.

**IN RE BRADSHAW**

[160 N.C. App. 677 (2003)]

As this Court has recently held:

> N.C. Gen. Stat. § 7B-806 requires that all juvenile "adjudicatory and dispositional hearings shall be recorded by stenographic notes or by electronic or mechanical means." Mere failure to comply with this statute standing alone is, however, not by itself grounds for a new hearing. A party, in order to prevail on an assignment of error under section 7B-806, must also demonstrate that the failure to record the evidence resulted in prejudice to that party.
>
> Furthermore, the use of general allegations is insufficient to show reversible error resulting from the loss of specific portions of testimony caused by gaps in recording. Where a verbatim transcript of the proceedings is unavailable, there are "means . . . available for [a party] to compile a narration of the evidence, i.e., reconstructing the testimony with the assistance of those persons present at the hearing." If an opposing party contended "the record on appeal was inaccurate in any respect, the matter could be resolved by the trial judge in settling the record on appeal."

*In re Clark*, 159 N.C. App. 75, 80, 582 S.E.2d 657, 660 (2003) (citations omitted).

As in *Clark*, respondent in this case has made no attempt to reconstruct the evidence and makes only general allegations of prejudice in his brief to this Court. Moreover, a review of the transcript indicates that much of the missing testimony was clearly referenced and repeated by the witnesses, including respondent, when the hearing continued on 28 March 2000. In light of respondent's failure to give any indication of the specific prejudice to him resulting from the missing testimony, this assignment of error is therefore overruled. *See id.*

II

[2] Respondent next contends the trial court's findings do not support a conclusion of neglect or willful abandonment.

A neglected juvenile, one of the grounds listed in section 7B-1111(a) for the termination of parental rights, *see* N.C.G.S. § 7B-1111(a)(1) (2001), is defined in part as "[a] juvenile who does not receive proper care, supervision, or discipline from the juvenile's parent," N.C.G.S. § 7B-101(15) (2001). Because "[n]eglect may be manifested in ways less tangible than failure to provide physical

necessities[,] . . . the trial judge may [also] consider . . . a parent's complete failure to provide the personal contact, love, and affection that inheres in the parental relationship." *In re Apa*, 59 N.C. App. 322, 324, 296 S.E.2d 811, 813 (1982).

In this case, the trial court's findings reflect that respondent was already incarcerated at the time of the minor child's birth in 1998 and was therefore physically unable to be part of the child's life unless petitioner brought the minor child to respondent for visitation. Such visits occurred at most six times and while the minor child was still a newborn. Apart from this situation, which was beyond respondent's control, the undisputed findings of the trial court clearly show that respondent neither provided support for the minor child nor sought any personal contact with or attempted to convey love and affection for the minor child. *See id.*; N.C.G.S. § 7B-101(15). Respondent never inquired after the minor child in his infrequent correspondence with petitioner. *See In re Graham*, 63 N.C. App. 146, 151, 303 S.E.2d 624, 627 (1983) ("[t]he fact that the respondent was incarcerated for a good portion of this period does not provide any justification for his all but total failure to communicate with or even inquire about his children") (citing *In re Burney*, 57 N.C. App. 203, 291 S.E.2d 177 (1982)). Even though the trial court found that respondent claimed to have drawn pictures of Disney characters on some of those letters for the purpose of entertaining the minor child, respondent admitted having sent his last letter to petitioner sometime in 1998. The trial court also noted only one telephone call by respondent to petitioner, in September 1999, during which he claims to have asked about the minor child. *See id.* (holding that "[o]ne communication in a two[-]year period does not evidence the 'personal contact, love, and affection that inheres in the parental relationship' ") (citation omitted). Furthermore, even though respondent was able to earn a small income in prison, he failed to provide any financial aid to petitioner in support of the minor child. *See In re Yocum*, 158 N.C. App. 198, 204, 580 S.E.2d 399, 403 (2003) ("respondent neglected the minor child's welfare, in that he never paid any child support for the minor child and did not send the minor child any gift or other type of acknowledgment on her birthday"). As such, there were sufficient findings to support a conclusion of neglect under the statute. Having found that the trial court's findings support the termination of respondent's parental rights under section 7B-1111(a)(1), we need not reach the issue of whether they were also sufficient for termination under section 7B-1111(a)(7). *See In re Moore*, 306 N.C. 394, 404, 293 S.E.2d 127,

133 (1982) (if either of the grounds for termination listed in the trial court's order "is supported by findings of fact . . . the order appealed from should be affirmed").

Affirmed.

Judges MARTIN and GEER concur.