WYNN, Judge.
Respondent mother appeals from an order terminating her parental rights. She contends the trial court erred in finding: (1) failure to pay a reasonable portion of the cost of the juveniles' care; (2) failure to show reasonable progress; (3) dependency and a reasonable probability that such incapacity would continue into the future; and (4) neglect. After careful review, we affirm the order of the trial court.
In brief, the procedural and factual history of the instant appeal is as follows: Respondent and her three children - J.Q.F., D.D.P., and C.W.B. - have interacted with Cabarrus CountyDepartment of Social Services ("DSS") since 1996, when Respondent was found to have neglected the juveniles. Family services were provided, but problems persisted. Respondent, who has a history of depression and substance abuse, inter alia, failed to take the juveniles, and herself, to scheduled therapy and treatment appointments, failed to provide stable housing for the juveniles, regularly hit the juveniles with a cutting board, and verbally berated the juveniles.
On 18 October 2001, Respondent consented to a finding that the juveniles were neglected. Though DSS removed the juveniles from Respondent's care, reunification remained the permanency plan. On 14 November 2001, DSS found that Respondent had made progress by, inter alia, obtaining housing, getting counseling, taking parenting classes, and maintaining employment. Because of Respondent's progress, DSS recommended, and the trial court ordered trial placement of D.D.P. with Respondent. The record reveals, however, that the trial placement was unsuccessful. Respondent, inter alia, threw a telephone at D.D.P., beat D.D.P. with a wooden paddle, snorted crushed medication through a straw in D.D.P.'s presence, left D.D.P. home alone on several occasions, and engaged in "inappropriate discipline and neglect." DSS therefore found that "the conditions leading to the removal of the children still exist" and recommended "that the goal for the children be adoption, as reunification does not appear to be in the children's best interest." The trial court heard the matter on 26 and 27 June 2003 and, in an order executed on 28 July 2003, made Findings of Fact including the following:
q. On February 24, 2000, [J.Q.F.] was involuntarily committed for nearly a one month stay after a referral from his school. Respondent [] had refused to sign [J.Q.F.] into hospital for treatment. He had attempted suicide three times. . . . Respondent [] reported that [J.Q.F.] threatens to kill himself, but she just ignores it . . . . [J.Q.F.] was nine (9) years old.
* * *
t. On March 22, 2000, [J.Q.F.] was finally discharged from the hospital. His diagnosis included major depression, anxiety disorder and oppositional defiant disorder. [J.Q.F.] and Respondent [] were to follow through with outpatient treatment for [J.Q.F.]. The clinician reported that Respondent [] minimized [J.Q.F.]'s need for mental health treatment. By that time, the Department had substantiated neglect against Respondent [].
* * *
v. Respondent [] reported to social worker that when [J.Q.F.] threatens to kill himself, she tells him "go ahead and do something stupid."
* * *
mm. . . . The record also reflects that [D.D.P.] was "severely overweight, nearly 100 lbs." [D.D.P.] was seven (7) years old.
* * *
rr. On . . . January 9, 2001 and February 7, 2001 Respondent [] took [D.D.P.] to Piedmont for individual treatment. At the January 9, 2001 session Respondent [] reported that she had told the children that she had called DSS and the[] children would be leaving soon. By February 7, 2001, [D.D.P.]'s behavior had deteriorated.
* * *
jjj. On June 19, 2001, Respondent [] cancelled the family's appointment for the Multifamily Group session, however, they did attend the June 26, 2001 session. During the session, [Respondent] acted inappropriately by threatening to hit the children.
* * *
ttt. On October 18, 2001, Respondent [] signed a consent order wherein she stipulated that she had neglected [J.Q.F., D.D.P., and C.W.B.]. . . . The neglect was based on [Respondent's] failure to provide proper supervision and failure to obtain medical and psychological treatment for [J.Q.F. and D.D.P.] and failure to address her own mental health issues. Respondent []was ordered to comply with the family services case plan outlined in the court summary that she was to execute. . . . [Respondent] was to: 1) Attend the non-offenders parent group and cooperate fully with all recommendations. . . . 2) Attend individual or group counseling for her own mental health issues. 3) Continue to attend and complete parenting classes and demonstrate the skills that she learned. . . . 6) Have a psychiatric evaluation and follow any medication recommendations. . . .
* * *
hhhh. On May 16, 2002, a review was held . . . . [Respondent] was no longer attending non-offender parent meetings, was no longer taking the medication prescribed to her, no longer attended group or individual counseling. In addition, Respondent [] continued to maintain that her conduct and care of her children had never been inappropriate.
* * *
mmmm. On September 19, 2002, a review and permanency planning hearing were held . . . . The Court found that Respondent [] had failed to make reasonable progress in addressing the issues, which led to placement. . . . Mainly, [Respondent] had provided inappropriate discipline to [D.D.P.] who was in trial placement with her by throwing a telephone at [D.D.P.]. While in the home, the social worker observed a chopping board with the words "[J.Q.F. and D.D.P.'s] whoopen stick" written by[Respondent]. [Respondent] admitted to using the board for discipline. . . .
* * *
pppp. On October 11, 2002, Dr. Philip A. Nofal, Psychiatrist and Dr. John Cassidy, Psychologist performed a mental health evaluation of Respondent []. The report revealed that [Respondent] had been in therapy for the past ten years. The diagnosis was that [Respondent] suffered from Depressive Disorder with cocaine and alcohol abuse in remission, Borderline Personality Disorder. . . . Dr. Nofal and Dr. Cassidy felt that many of [Respondent's] symptoms were personality based, necessitating continued therapy.
* * *
vvvv. On February 21, 2003, Piedmont reported that Respondent [] was not compliant with treatment. She had failed to show for appointments and her telephone number was disconnected. This demonstrated a failure to follow up with treatment recommendations[.]
* * *
yyyy. The cost of [J.Q.F.]'s care has been $24,130.00. The cost of [D.D.P.]'s care has been $7,547.00. The cost of [C.W.B.]'s care has been $5,929.00. Respondent [] had the ability to provide support for the children for the six months [p]receding the filing of the termination motion but has failed to do so. On December 24, 2002 she was working for the Waffle House full time, for $2.13 per hour plus tips.
zzzz. During the time that her children have been in the custody of the Department, Respondent [] has not provided any money toward the children's care. From August 2001 until June 2002, [Respondent] received child support from [D.D.P.]'s father []. However, she kept the money for herself and did not turn it over [to the] Department. She worked from August 15, 2001 at an assisted living facility full time earning between $5.80 and $7.50 per hour. In April 2002, she worked briefly for Exxon Express. She has been employed with Exxon Express for the past six (6) months full time earning $7.00 per hour.
Based on these and other Findings of Fact, the trial court concluded, inter alia, that: (1) Respondent had failed to pay a reasonable portion of the cost of the juveniles' care; (2) Respondent had failed to show reasonable progress; (3) the juveniles were dependent, with a reasonable probability that Respondent's incapacity to provide care would continue into the future; and (4) Respondent neglected the juveniles. Respondent appeals.
On appeal, "our standard of review for the termination of parental rights is whether the court's 'findings of fact are based upon clear, cogent and convincing evidence' and whether the `findings support the conclusions of law.'" In re Baker, 158 N.C. App. 491, 493, 581 S.E.2d 144, 146 (2003) (quoting In re Pope, 144 N.C. App. 32, 40, 547 S.E.2d 153, 158 (2001)). "So long as the findings of fact support a conclusion based on [the relevant statute], the order terminating parental rights must be affirmed." In re Oghenekevebe, 123 N.C. App. 434, 436, 473 S.E.2d 393, 395-96 (1996)(citation omitted).
Respondent first contends that the trial court erred in finding that she had failed to pay a reasonable portion of the cost of the juveniles' care. Respondent asserts that the trial court failed to make a finding of what was reasonable for her to pay. North Carolina General Statute section 7B-1111(a)(3) states that parental rights may be terminated where a "juvenile has been placedin the custody of a [] department of social services . . ., and the parent, for a continuous period of six months . . . has willfully failed for such period to pay a reasonable portion of the cost of care for the juvenile although physically and financially able to do so." N.C. Gen. Stat. §7B-1111(a)(3) (2003). "[T]here is no requirement that the trial court make a finding as to what specific amount of support would have constituted a 'reasonable portion' under the circumstances." In re Huff, 140 N.C. App. 288, 293, 536 S.E.2d 838, 842 (2000). Indeed, the pertinent case law "simply require[s] that the trial court make specific findings that a parent was able to pay some amount greater than the amount the parent, in fact, paid during the relevant time period." Id. (citing In re Garner, 75 N.C. App. 137, 141, 330 S.E.2d 33, 36 (1985); In re Manus, 82 N.C. App. 340, 349-50, 346 S.E.2d 289, 295 (1986)).
Here, while the trial court may not have made detailed findings as to what amount Respondent should have paid, there was clear, cogent, and convincing evidence as to the cost of the juveniles' care, as well as to Respondent's income during more than six months preceding the termination of her parental rights. Respondent gave clear and convincing testimony showing her employment and salaries at several jobs - including Waffle House, Exxon Express, and an assisted living facility - while the juveniles were in DSS's care. Moreover, there was clear and convincing evidence that, while Respondent had received childsupport payments from D.D.P.'s father during the time D.D.P. was in DSS's care, Respondent kept the money for herself and did not give it to DSS to cover any of D.D.P.'s costs. Respondent "failed to pay any portion of the cost of care for the [juveniles] during the relevant [] period. . . . [W]e have no difficulty concluding that zero is not a reasonable portion under the circumstances here." Huff, 140 N.C. App. at 293, 536 S.E.2d at 842. We therefore find no error.
Next, Respondent contends that the trial court erred in finding that she had failed to show reasonable progress.[1] North Carolina General Statute section 7B-1111(a)(2) states that parental rights may be terminated where a "parent has willfully left [a] juvenile in foster care or placement outside the home for more than 12 months without showing to the satisfaction of the court that reasonable progress under the circumstances has been made in correcting those conditions which led to the removal of the juvenile." N.C. Gen. Stat. § 7B-1111(a)(2) (2003). A parent must demonstrate not merely effort but also positive results to be deemed to have made reasonable progress. In re Nolen, 117 N.C. App. 693, 700, 453 S.E.2d 220, 225 (1995) ("Implicit in the meaningof positive response is that not only must positive efforts be made towards improving the situation, but that these efforts are obtaining or have obtained positive results"). "This Court has held that extremely limited progress is not reasonable progress. This standard operates as a safeguard for children. If parents were not required to show both positive efforts and positive results, a parent could forestall termination proceedings indefinitely by making sporadic efforts for that purpose." In re B.S.D.S., 163 N.C. App. 540, 545, 594 S.E.2d 89, 93 (2004) (internal quotations omitted).
Here, the record reflects that, while Respondent made some amount of effort and may have obtained some positive results, she did not demonstrate reasonable progress in correcting the conditions that led to the removal of the juveniles. Respondent failed to attend individual and group counseling, attend non-offender parenting classes, and take medication prescribed to her. Further, Respondent maintained that her conduct toward her children had never been inappropriate. While D.D.P. was provisionally placed with Respondent, Respondent threw a telephone at D.D.P., beat D.D.P. with a wooden paddle, snorted medication in front of D.D.P., and left D.D.P. without supervision. Such conduct does not constitute reasonable progress in correcting those conditions which led to the removal of these juveniles. We therefore find no error.
Third, Respondent contends that the trial court erred in finding that the juveniles were dependent, with a reasonableprobability that Respondent's incapacity to provide care would continue into the future. North Carolina General Statute section 7B-1111(a)(6) states that parental rights may be terminated where a "parent is incapable of providing for the proper care and supervision of the juvenile, such that the juvenile is a dependent juvenile . . ., and that there is a reasonable probability that such incapability will continue for the foreseeable future." N.C. Gen. Stat. § 7B-1111(a)(6) (2003).
Here, the record reflects that Respondent, who had a history of cocaine and alcohol abuse, snorted medication through a straw in front of D.D.P. during D.D.P.'s trial placement with her. Further, Respondent failed to take required medication and attend individual and group counseling. Such treatment was deemed necessary for her mental conditions, which had been diagnosed as Depressive Disorder and Borderline Personality Disorder. Because incapability to provide care "may be the result of substance abuse, . . . [or] mental illness . . . that renders the parent unable or unavailable to parent the juvenile" (N.C. Gen. Stat. § 7B-1111(a)(6)), and because the record reflects clear and convincing evidence that Respondent suffered from mental illness and substance abuse, the trial court did not err in finding the juveniles to be dependent, or in finding that Respondent's incapability would likely continue for the foreseeable future.
Finally, Respondent contends that the trial court erred in finding that the juveniles were neglected. North Carolina GeneralStatute section 7B-1111(a)(1) states that parental rights may be terminated where a juvenile is neglected. N.C. Gen. Stat. § 1111(a)(1) (2003). A juvenile is neglected where the juvenile "does not receive proper care, supervision, or discipline from the juvenile's parent, . . . has been abandoned[,] . . . is not provided necessary medical care[,] or . . . lives in an environment injurious to the juvenile's welfare[.]" N.C. Gen. Stat. § 7B-101(15) (2003); see also In re Stumbo, 357 N.C. 279, 287, 582 S.E.2d 255, 260-61 (2003) (same).
Here, the juveniles were, inter alia, left alone, not given necessary medical / mental health care, improperly disciplined with a wooden paddle and a telephone, and verbally abused. Furthermore, Respondent not only had been adjudicated neglectful over the course of the prior eight years, but even during the trial placement of D.D.P. in late 2001 through Spring 2002, she neglected D.D.P. "Given the evidence of past neglect in conjunction with the special needs of the children and the evidence that respondent-mother has made no advancements in confronting and eliminating her problem[s] . . . , we are convinced that there was clear, cogent, and convincing evidence of neglect and the probability of its repetition . . . to support the order terminating respondent-mother's parental rights." In re Leftwich, 135 N.C. App. 67, 73 518 S.E.2d 799,803 (1999); see also In re Davis, 116 N.C. App. 409, 414, 448 S.E.2d 303, 306 (1994) (failure to correct conditions that led to earlier findings of neglect and failure tocorrect environment injurious to juvenile's welfare properly supported a finding of neglect).
In sum, we affirm the trial court's order that Respondent's parental rights be terminated.
Affirmed.
Judges HUDSON and ELMORE concur.
Report per Rule 30(e).

We note that, "[h]aving found that the trial court's findings support the termination of respondent's parental rights under [one section of 7B-1111], we need not reach the issue of whether they were also sufficient for termination under" other sections of North Carolina General Statute section 7B-1111. In re Bradshaw, 160 N.C. App. 677, 682-83, 587 S.E.2d 83, 87 (2003) (citing In re Moore, 306 N.C. 394, 404, 293 S.E.2d 127, 133 (1982)). Nevertheless, we address Respondent's other arguments.