An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

NO. COA14-205

NORTH CAROLINA COURT OF APPEALS

Filed: 16 September 2014

IN THE MATTER OF:

C.V.M.                                    Surry County
                                          No. 13 JT 63


Appeal by respondent from orders entered 13 November 2013 by Judge Charles M. Neaves, Jr. in Surry County District Court. Heard in the Court of Appeals 18 August 2014.

*Gretchen Kirkman for petitioner-appellee mother.*

*David A. Perez for respondent-appellant father.*

*No brief filed for guardian ad litem.*

HUNTER, Robert C., Judge.

Respondent, the father of C.V.M. ("the juvenile"), appeals from orders terminating his parental rights. After careful review, we hold statutory grounds exist for the termination of respondent's parental rights. Accordingly, we affirm the trial court's orders.

**Background**

The thirteen-year-old juvenile has been in the physical custody of her mother, the petitioner, since her birth. Respondent neither married nor lived with petitioner. He visited with the juvenile sporadically prior to her first birthday. When the juvenile was one-year-old, respondent was arrested for kidnapping petitioner, stabbing her repeatedly with a knife, leaving her in a field, and then attempting to drive into the building where the juvenile was staying. Petitioner had a restraining order against him prior to the attack. Respondent has been incarcerated since that time and petitioner testified that he would be released on 19 October 2013. Petitioner intends to marry her boyfriend of seven years, and he would like to adopt the juvenile. The juvenile wants respondent's parental rights to be terminated, and she wants to be adopted by petitioner's boyfriend.

On 3 July 2013, petitioner filed a petition to terminate respondent's parental rights. The petition alleged that respondent neglected and willfully abandoned the juvenile. The trial court held an adjudication and disposition hearing on 11 September 2013, and, on 13 November 2013, entered orders terminating respondent's parental rights pursuant to N.C. Gen.

Stat. § 7B-1111(a)(1) (neglect) and (7) (willful abandonment). Respondent appeals.

## Grounds for Appeal

We first address whether respondent's appeal is properly before this Court. Recognizing that his appeal is subject to dismissal because he did not serve the guardian ad litem with his notice of appeal, *see Mason v. Moore County Bd. of Comm'rs*, 229 N.C. 626, 628, 51 S.E.2d 6, 7 (1948), respondent filed a petition for writ of certiorari seeking review of the orders. Petitioner has also filed a motion to dismiss this appeal based on respondent's failure to serve the guardian ad litem with notice of appeal. We deny petitioner's motion to dismiss the appeal, and dismiss respondent's petition for writ of certiorari as moot, because the guardian ad litem waived the failure of service when she and petitioner filed a joint Motion for Extension of Time to File and Serve Brief. *See Hale v. Afro-American Arts Int'l*, 335 N.C. 231, 232, 436 S.E.2d 588, 589 (1993).

## Arguments

Respondent argues that the trial court erred in concluding grounds existed pursuant to N.C. Gen. Stat. § 7B-1111(a)(1) to

terminate his parental rights because its findings of fact were not supported by sufficient evidence. We disagree.

Termination of parental rights cases are conducted in two stages. *In re Blackburn,* 142 N.C. App. 607, 610, 543 S.E.2d 906, 908 (2001). At the adjudicatory stage of a termination of parental rights hearing, the burden is on the petitioner to prove by clear, cogent, and convincing evidence that at least one ground for termination exists. N.C. Gen. Stat. § 7B-1109(f) (2013); *Blackburn*, 142 N.C. App. at 610, 543 S.E.2d at 908. Review in the appellate courts is limited to determining whether clear and convincing evidence exists to support the findings of fact, and whether the findings of fact support the conclusions of law. *In re Huff*, 140 N.C. App. 288, 291, 536 S.E.2d 838, 840 (2000), *disc. review denied*, 353 N.C. 374, 547 S.E.2d 9 (2001). "When the trial court is the trier of fact, the court is empowered to assign weight to the evidence presented at the trial as it deems appropriate." *In re Oghenekevebe*, 123 N.C. App. 434, 439, 473 S.E.2d 393, 397 (1996). "[F]indings of fact made by the trial court . . . are conclusive on appeal if there is evidence to support them." *In re H.S.F.*, 182 N.C. App. 739, 742, 645 S.E.2d 383, 384 (2007) (citation and internal quotation marks omitted).

Grounds exist to terminate parental rights when the parent has neglected the juvenile. N.C. Gen. Stat. § 7B-1111(a)(1) (2013). A neglected juvenile is defined as "[a] juvenile who does not receive proper care, supervision, or discipline from the juvenile's parent, guardian, custodian, or caretaker; or who has been abandoned; . . ." N.C. Gen. Stat. § 7B-101(15) (2013). "In determining whether neglect has occurred, the trial judge may consider . . . a parent's complete failure to provide the personal contact, love, and affection that exists in the parental relationship." *In re Yocum*, 158 N.C. App. 198, 204, 580 S.E.2d 399, 403 (citation, internal quotation marks, and brackets omitted), *aff'd per curiam*, 357 N.C. 568, 597 S.E.2d 674 (2003). We note that "[i]ncarceration, standing alone, is neither a sword nor a shield in a termination of parental rights decision." *In re P.L.P.*, 173 N.C. App. 1, 10, 618 S.E.2d 241, 247 (2005) (citation and quotation marks omitted), *aff'd per curiam*, 360 N.C. 360, 625 S.E.2d 779 (2006). Nevertheless, neglect exists when an incarcerated respondent "neither provide[s] support for the minor child nor s[eeks] any personal contact with or attempt[s] to convey love and affection for the minor child." *In re Bradshaw*, 160 N.C. App. 677, 682, 587 S.E.2d 83, 86 (2003). "The determinative factors must be the

best interests of the child and the fitness of the parent to care for the child *at the time of the termination proceeding.*" *In re Manus*, 82 N.C. App. 340, 348, 346 S.E.2d 289, 294 (1986) (quoting *In re Ballard*, 311 N.C. 708, 715, 319 S.E. 2d 227, 232 (1984)) (emphasis in original).

In this case, the trial court found the following relevant facts:

> 14.    The respondent has been incarcerated since the minor child was one year old due to an assault on the petitioner wherein he plead [sic] guilty to assault with a deadly weapon with intent to kill inflicting serious injury.
>
> 15.    The minor child has been in the physical custody of the petitioner since birth . . . .
>
> 16.        The respondent was aware of the petitioner's address for many years after his incarceration. The respondent was aware of the petitioner's mother's address as well as her father's address. The respondent has never contacted the petitioner's mother or father since his incarceration in 2001 asking about the health and welfare of the minor child. The respondent has not contacted the petitioner asking about the health and welfare of the minor child since 2001.
>
> . . .
>
> 18.    The respondent has not filed any pleadings or motions requesting visitation via skype or phone contact with the minor child since he was incarcerated in 2001.
>
> 19. The respondent has not been prohibited or precluded from having contact with the minor

child. The respondent has voluntarily chosen to have no contact with the minor child since 2003.

20. The minor child has not seen the respondent since she was one year old. Prior to the respondent's incarceration when the child was one year old, the minor child only had contact with the respondent a few times.

21. The respondent has not provided any care, supervision, discipline or love and affection for the minor child since 2003.

22. Since the minor child's birth, the respondent has never supported the minor child financially or emotionally.

23. The minor child does not know the respondent and does not have a bond with the respondent.

24. Whenever the respondent was incarcerated in 2001, the petitioner was living with [E.R.M.], her grandmother. The respondent knew that the petitioner and minor child were living with [E.R.M.]. [E.R.M.] still lives at the same address and has the same phone number. The respondent knew the address (he had been there on different occasions and knew the phone number because he had called the number at different times). The respondent has not called [E.R.M.]'s home or sent any correspondence asking about the welfare of the minor child since 2001. The respondent never sent any letters or presents to the minor child at this address since 2001. Nothing precluded the respondent from calling [E.R.M.]'s number or sending correspondence or gifts to her address. The petitioner's mother ([E.R.M.]) has never sought a restraining order against the respondent and there has never been a restraining order entered wherein the respondent was prohibited from contacting the petitioner's mother. (Again, the petitioner received a restraining order against the respondent which

expired in March, 2003 which precluded the respondent from being at [E.R.M.]'s residence.)

25.    The respondent knew the petitioner's father ([C.M.]), knew his address and phone number. The respondent had called [C.M.]'s number and been to his residence. The respondent has not called [C.M.]'s home or sent any correspondence asking about the welfare of the minor child. The respondent never sent any letters or presents to the minor child at this address. Nothing precluded the respondent from calling [C.M.]'s number or sending correspondence or gifts to his address for the child. [C.M.] never had a restraining order against the respondent, nor did he ever notify him or the prison that he was not allowed to contact him or send correspondence to that home. [C.M.] has had to help the petitioner in the past, financially, to care for the minor child where the respondent was not sending any support for the care of the child.

26.    The minor child, [C.V.M.] testified during trial during the adjudication and disposition phases. . . . The minor child never sought a restraining order against the respondent. The minor child never received a phone call, money, or a gift from the respondent.. . .    Other than seeing the respondent in court on September 11, 2013 the minor child has no memory of the respondent. The minor child never prohibited the respondent from having any contact with her.

27.    The minor child, [C.[V.]M.], has an older, half sister named [B.N.M.]. In 2003 the respondent sent letters to [B.[N.]M.]'s school for the petitioner. Since 2003 [B.[N.]M.] has not been contacted by the respondent concerning the minor child. . . . [B.N.M.] has never contacted the respondent or prison notifying the respondent that he could have not have any contact with her or [C.[V.]M.]. [B.N.M.] has never had a restraining order against the respondent.

28.     The respondent, [E.W.], has been incarcerated since 2001. Since 2003 the respondent has not sent the minor child any letters, cards or gifts. Since 2001 the respondent has not sent any money for the care and support of the minor child. The respondent worked in jail in the kitchen. Also, at times, the respondent sold drugs and tattoos in jail. Although the respondent made a nominal amount of money, the respondent could have sent something for the care and support of the minor child, but chose not to.

29.     The aforementioned acts of neglect and abandonment were voluntary, willful and intentional on the part of the respondent. The actions, and inaction, of the respondent show a settled purpose to forego all parental duties and relinquish all parental claims to the minor child.

Respondent argues that findings of fact 16, 19, 20, 21, 22, 24, 25, 28, and 29 are not supported by evidence.  Respondent also challenges findings of fact 9, 12, and 13, but we do not address his arguments because these findings are not essential to support the trial court's conclusion.  *See In re T.M.*, 180 N.C. App. 539, 547, 638 S.E.2d 236, 240-41 (2006).  Respondent does not challenge any other findings of fact regarding this argument, and they are binding on appeal.  *Koufman v. Koufman*, 330 N.C. 93, 97, 408 S.E.2d 729, 731 (1991).  Respondent also argues that conclusion of law number 3, that there is clear, cogent and convincing evidence of neglect, is erroneous.  We disagree.

For the first year of C.V.M.'s life, respondent did not provide housing or financial support. He did not provide child support. He did not take her to the doctor. He had sporadic visits with her and did not request additional contact, visitation, or custody.

The only contact respondent made with C.V.M. in the twelve years he was incarcerated was one birthday card in 2002 or 2003, which was included in letters addressed to petitioner. The grandmother of one of respondent's children pulled petitioner's older child out of the classroom without permission in order to give her this correspondence, which was all addressed to petitioner. The grandmother continued to do this after petitioner asked her to stop, so petitioner contacted the Department of Corrections. The prison superintendent issued a letter to respondent in January 2004 informing him to cease contacting petitioner either directly or indirectly. Petitioner initially had a protective order against respondent, but it did not include C.V.M. and expired in 2003.

While respondent may have erroneously thought he was not allowed to contact C.V.M. or her family members, he made no effort to clarify that in the following ten years. After 2003, respondent did not call, write, or in any way contact C.V.M.

even though he knew her home address, home phone number, petitioner's work address and phone number, the phone number of her grandfather, and the phone number of her great grandparents. Nor did he provide any financial support, although he had various jobs in prison including working in the kitchen and earned additional money for himself by selling illegal drugs and inking illegal tattoos.

Respondent knew and had means to communicate with his family members and petitioner's family members who lived in the same town. These included petitioner's parents and grandparents; her older daughter; respondent's older son and his mother and grandmother; his mother; and his brother. However, he never used his family members to get in contact with C.V.M. None of those family members were prohibited from contacting C.V.M. or petitioner, and, in fact, members of respondent's family had several chance encounters with petitioner and C.V.M. at local establishments.

Despite the fact that defendant had at least ten years free from protective orders and contact prohibitions and the fact that he had the ability to reach out to C.V.M. through multiple family members in close proximity, defendant chose not to contact C.V.M. or provide her with any emotional or financial

support.  Given the plenary evidence, we conclude that the trial court's findings of fact supporting the grounds for termination pursuant to N.C. Gen. Stat. § 7B-1111(a)(1) (neglect) were based on clear, cogent, and convincing evidence.

Respondent argues further that the trial court erred in finding evidence to support grounds pursuant to N.C. Gen. Stat. § 7B-1111(a)(7) (willful abandonment).  We do not address that argument, however, because a finding of one statutory ground is sufficient to support the termination of parental rights.  *In re Humphrey*, 156 N.C. App. 533, 540, 577 S.E.2d 421, 426 (2003).

## Conclusion

Based on the foregoing reasons, we affirm the trial court's orders terminating respondent's parental rights.


Affirmed.

Judges DILLON and DAVIS concur.

Report per Rule 30(e).