DAVIS, Judge.
 

 Alex Shackleford ("Respondent") appeals from the trial court's order involuntarily committing him to Holly Hill Hospital ("Holly Hill") for a period of inpatient treatment. On appeal, Respondent argues that the lack of a verbatim transcript of his commitment hearing has deprived him of the opportunity
 
 *17
 
 for meaningful appellate review of the commitment order and entitles him to a new hearing. After careful review, we vacate the trial court's order and remand for a new hearing.
 

 Factual Background
 

 On 1 May 2015, Dr. Yi-Zhe Wang ("Dr. Wang") filed an affidavit and petition for involuntary commitment in which he alleged Respondent was mentally ill and dangerous to himself and others. A magistrate ordered Respondent to be held for examination at Holly Hill that same day. A hearing was held on 14 May 2015 before Judge V.A. Davidian III in Wake County District Court. On 16 May 2015, the trial court entered an order containing the following findings and conclusions:
 

 A. Respondent is a 22 year old male. Respondent was admitted to Holly Hill Hospital on April 25, 2014.
 

 B. Dr. Wang is Respondent's treating physician at Holly Hill Hospital. Dr. Wang has examined the patient six out of seven days per week, beginning on April 27, 2015. Respondent stipulated at the hearing that Dr. Wang is an expert in the field of psychiatry.
 

 C. Respondent has a mental illness and diagnosis of antisocial personality disorder. Respondent presents with impulsiveness, unlawfulness, deceitfulness, agitation, anger, and lack of remorse.
 

 D. Respondent has been prescribed Depakote for his illness. Dr. Wang testified that Respondent was initially compliant with medication but has refused medication in the two days prior to the hearing. Respondent's medication regimen is not stable at this point.
 

 E. Respondent's grandmother, whom he has lived with since birth, testified that one week prior to the hearing, Respondent threatened to kill her and her husband and burn their house down. Respondent's grandmother also testified about an instance in which Respondent wrestled with his grandmother in an attempt to get to her money. Respondent has also told his grandmother about a voice in his head. Respondent's grandmother also testified about a number of occasions in which Respondent has demonstrated deceitfulness, impulsiveness, and a lack of remorse regarding his grandmother's job and property. His grandmother is concerned that Respondent will injure himself or another person if he is discharged from the hospital.
 

 F. Dr. Wang testified that continued inpatient treatment is necessary. Treatment at a lower level of care would be inappropriate at this time since Respondent has not been cooperative with treatment and has no insight into his illness.
 

 G. Respondent presents a danger to himself and others. Respondent is in need of further treatment at a 24-hour facility for up to 90 days to stabilize his condition and to prepare him to ultimately step down to a lower level of care.
 

 The trial court ordered that Respondent be committed to Holly Hill for a period of time not to exceed 90 days. Respondent entered written notice of appeal on 5 June 2015. Following the entry of notice of appeal, Respondent's appointed appellate counsel, who did not represent him at the commitment hearing, was informed by the court reporting manager for the Administrative Office of the Courts that no transcript of the hearing could be prepared because the recording equipment in the courtroom had failed to record the hearing and there had not been a court reporter present in the courtroom.
 

 Analysis
 

 The only issue presented in this appeal is whether Respondent is entitled to a new involuntary commitment hearing because the lack of a verbatim transcript of the underlying hearing denied him his right to meaningful appellate review. Initially, we note that although Respondent's commitment period has expired, his appeal is not moot given the "possibility that [R]espondent's commitment in this case might ... form the basis for a future commitment, along with other obvious collateral legal consequences[.]"
 
 In re Hatley,
 

 291 N.C. 693
 
 , 695,
 
 231 S.E.2d 633
 
 , 635 (1977).
 

 An order of involuntary commitment is immediately appealable.
 

 *18
 
 N.C. Gen.Stat. § 122C-272 (2015). Pursuant to N.C. Gen.Stat. § 122C-268, the respondent is entitled on appeal to obtain a transcript of the involuntary commitment proceeding, which must be provided at the State's expense if the respondent is indigent. N.C. Gen.Stat. § 122C-268(j) (2015).
 

 Our caselaw contemplates the possibility that the unavailability of a verbatim transcript may in certain cases deprive a party of its right to meaningful appellate review and that, in such cases, the absence of the transcript would itself constitute a basis for appeal.
 
 See
 

 State v. Neely,
 

 21 N.C.App. 439
 
 , 441,
 
 204 S.E.2d 531
 
 , 532 (1974) ("If the circumstances so justify, [the appellant] might ... assert as an assignment of error that he is unable to obtain an effective appellate review of errors committed during the trial proceeding because of the inability of the Reporter to prepare a transcript.").
 

 However, the unavailability of a verbatim transcript does not
 
 automatically
 
 constitute reversible error in every case. Rather, to "prevail on such grounds, a party must demonstrate that the missing recorded evidence resulted in prejudice."
 
 State v. Quick,
 

 179 N.C.App. 647
 
 , 651,
 
 634 S.E.2d 915
 
 , 918 (2006). General allegations of prejudice are insufficient to show reversible error.
 

 Id.
 

 Moreover, "the absence of a complete transcript does not prejudice the defendant where alternatives are available that would fulfill the same functions as a transcript and provide the [appellant] with a meaningful appeal."
 
 State v. Lawrence,
 

 352 N.C. 1
 
 , 16,
 
 530 S.E.2d 807
 
 , 817 (2000),
 
 cert. denied,
 

 531 U.S. 1083
 
 ,
 
 121 S.Ct. 789
 
 ,
 
 148 L.Ed.2d 684
 
 (2001) ;
 
 see also
 

 In re Bradshaw,
 

 160 N.C.App. 677
 
 , 681,
 
 587 S.E.2d 83
 
 , 86 (2003) (denying request for new trial where "respondent in this case has made no attempt to reconstruct the evidence....");
 
 In re Clark,
 

 159 N.C.App. 75
 
 , 83,
 
 582 S.E.2d 657
 
 , 662 (2003) (rejecting request for new hearing where "respondent has made no attempt to ... provide a narration of the evidence....").
 

 Thus, in accordance with the legal framework set out above, we must first determine whether Respondent made sufficient efforts to reconstruct the hearing in the absence of a transcript. In this regard, Respondent's appellate counsel sent letters to the following persons present at the hearing: Judge Davidian; Dr. Wang; Lori Callaway ("Callaway"), the deputy clerk; Varsha Gadani ("Gadani"), counsel for Holly Hill; Kristen Todd ("Todd"), Respondent's counsel; and Respondent. In these letters, Respondent's appellate counsel requested that each of the recipients provide him with their recollections of the hearing and any notes they possessed regarding the proceeding.
 

 Respondent's appellate counsel received a response from each recipient except for Respondent. Judge Davidian's reply stated as follows: "I do not have any additional memories of the case, other than presented in the order, nor did I retain any notes from the case." Callaway replied that she did not have any notes from the hearing. Appellate counsel for Holly Hill responded on behalf of both Dr. Wang and Gadani, stating that "they believe that the findings of fact accurately reflect their recollection of the evidence presented at the hearing" and that "[a]ny notes regarding the hearing would be protected under the work product doctrine. In any event, our notes from the hearing would not shed any light on the testimony presented at trial." The only recipient of the letter who made any attempt to help reconstruct the events of the hearing was Todd, who provided to Respondent's appellate counsel her notes from the hearing.
 

 We find our decision in
 
 State v. Hobbs,
 

 190 N.C.App. 183
 
 ,
 
 660 S.E.2d 168
 
 (2008), to be particularly instructive on the question of whether Respondent has "satisfied his burden of attempting to reconstruct the record."
 

 Id.
 

 at 186
 
 ,
 
 660 S.E.2d at 170
 
 . In
 
 Hobbs,
 
 the court reporter's audiotapes and handwritten notes from the entire evidentiary stage of the defendant's criminal trial were lost in the mail.
 

 Id.
 

 at 184
 
 ,
 
 660 S.E.2d at 169-70
 
 . In an effort to reconstruct the proceedings, the defendant's appellate counsel sent letters to the defendant's trial counsel, the trial judge, and the prosecutor asking for their accounts of the missing testimony. The defendant's trial counsel stated that he had little memory of the charges or the trial, possessed no notes from the trial, and was unable to assist
 
 *19
 
 in reconstructing the proceedings. The trial judge stated that she had no notes from the case, and the prosecutor never responded to the inquiry. In light of these efforts, we determined that the appellant had satisfied his burden of attempting to reconstruct the record.
 

 Id.
 

 at 186-87
 
 ,
 
 660 S.E.2d at 170-71
 
 .
 

 In the present case, Respondent's appellate counsel took essentially the same steps as the appellant's attorney in
 
 Hobbs.
 
 Therefore, we similarly conclude that Respondent has satisfied his burden of attempting to reconstruct the record.
 

 We next address whether Respondent's reconstruction efforts produced an adequate alternative to a verbatim transcript-that is, one that "would fulfill the same functions as a transcript...."
 
 Lawrence,
 

 352 N.C. at 16
 
 ,
 
 530 S.E.2d at 817
 
 . As discussed more fully below, we are unable to conclude that the limited reconstruction-consisting solely of Todd's notes-of the evidence presented at the hearing was sufficient to allow for meaningful appellate review.
 

 We note that in virtually all of the cases in which we have held that an adequate alternative to a verbatim transcript existed, the transcript of the proceeding at issue was only
 
 partially
 
 incomplete, and any gaps therein were capable of being filled.
 
 See, e.g.,
 

 Bradshaw,
 

 160 N.C.App. at 681
 
 ,
 
 587 S.E.2d at 86
 
 ("[A] review of the transcript indicates that much of the missing testimony was clearly referenced and repeated by the witnesses, including respondent[.]");
 
 State v. Owens,
 

 160 N.C.App. 494
 
 , 499,
 
 586 S.E.2d 519
 
 , 523 (2003) ("[A] review of the transcript reveals that all of the questions posed by counsel prior to and comments made immediately following the missing responses are included in the transcript and at no point was such a missing response followed by an objection from defense counsel. Because the context of the questioning and the likely responses that were elicited from the potential jurors are therefore ascertainable from the record, defendant was not denied meaningful appellate review[.]");
 
 State v. Hammonds,
 

 141 N.C.App. 152
 
 , 167,
 
 541 S.E.2d 166
 
 , 177 (2000) (holding that while trial "transcript is incomplete in places .... it is possible to reconstruct the substance of what was said, even if the precise words are lost"),
 
 aff'd per curiam,
 

 354 N.C. 353
 
 ,
 
 554 S.E.2d 645
 
 (2001).
 

 While the State cites
 
 Lawrence
 
 in support of its argument that Respondent's appellate counsel was, in fact, able to compile an adequate substitute for a verbatim transcript, we believe the State's reliance on
 
 Lawrence
 
 is misplaced. In
 
 Lawrence,
 
 as a result of a mechanical malfunction, the trial transcript was missing the testimony of one of the State's witnesses in its entirety along with a portion of the testimony from another witness.
 
 Lawrence,
 

 352 N.C. at 16
 
 ,
 
 530 S.E.2d at 817
 
 . On appeal, the State set out in narrative form the unrecorded testimony as permitted under N.C.R.App. P. 9(c)(1). During a hearing to settle the record, the witnesses whose testimony was missing from the transcript testified that the State's narrative was accurate. In addition, the court reporter from the trial responded that, according to her trial notes, no objections had been made during the omitted portions of testimony. Under these circumstances, our Supreme Court held that "[t]he State's narrative constitute[d] an available alternative that is 'substantially equivalent' to the complete transcript[.]"
 

 Id.
 

 We find
 
 Lawrence
 
 to be materially distinguishable from the present case. In
 
 Lawrence,
 
 (1) the transcript was missing the complete testimony of only one witness and the partial testimony of another witness-neither of whose testimony was relevant to the focus of the defendant's defense
 
 [1]
 
 ; (2) the State provided a narrative of the missing testimony, which the relevant witnesses confirmed was accurate; and (3) the court reporter confirmed that no objections had been made during the omitted portions of testimony.
 

 Here, conversely, the transcript of the
 
 entire
 
 proceeding is unavailable, and the only independent account of what took place at the hearing consists of five pages of bare-
 
 *20
 
 bones handwritten notes that-in addition to not being wholly legible-clearly do not amount to a comprehensive account of what transpired at the hearing. While these notes could conceivably assist in recreating the hearing if supplemented by other sources providing greater detail, they are not in and of themselves "substantially equivalent to the complete transcript[.]"
 
 Id.
 
 at 16,
 
 530 S.E.2d at 817
 
 (quotation marks omitted). Accordingly, we cannot conclude that these notes from Respondent's trial counsel constitute an adequate alternative to a verbatim hearing transcript "that would fulfill the same functions as a transcript...."
 

 Id.
 

 Finally, we must determine whether the lack of an adequate alternative to a verbatim transcript of the hearing served to deny Respondent meaningful appellate review such that a new hearing is required.
 
 See
 

 Hobbs,
 

 190 N.C.App. at 187
 
 ,
 
 660 S.E.2d at 171
 
 ("Without an adequate alternative, this Court must determine whether the incomplete nature of the transcript prevents the appellate court from conducting a meaningful appellate review, in which case a new trial would be warranted." (citation and quotation marks omitted)).
 

 We have previously recognized the importance of a transcript on appeal.
 

 [A]s any effective appellate advocate will attest, the most basic and fundamental tool of his profession is the complete trial transcript, through which his trained fingers may leaf and his trained eyes may roam in search of an error, a lead to an error, or even a basis upon which to urge a change in an established and hitherto accepted principle of law.
 

 Id.
 

 at 185
 
 ,
 
 660 S.E.2d at 170
 
 (quoting
 
 Hardy v. United States,
 

 375 U.S. 277
 
 , 288,
 
 84 S.Ct. 424
 
 , 431,
 
 11 L.Ed.2d 331
 
 , 339 (1964) (Goldberg, J., concurring)).
 

 In
 
 Hobbs,
 
 the missing portion of the transcript encompassed the entire testimonial portion of the trial, which included an unknown number of witnesses over three days.
 
 Id.
 
 at 187,
 
 660 S.E.2d at 171
 
 . We held that the appellant's ability to litigate the appeal was "hindered by the total unavailability of either a transcript or an acceptable alternative for a
 
 majority
 
 of [the] defendant's trial."
 

 Id.
 

 at 187-88
 
 ,
 
 660 S.E.2d at 171
 
 . Thus, we concluded that the appellant had been "unable to procure meaningful appellate review of his trial" and was entitled to a new trial.
 

 Id.
 

 at 188
 
 ,
 
 660 S.E.2d at 172
 
 .
 

 Similarly, in
 
 State v. King,
 

 218 N.C.App. 347
 
 ,
 
 721 S.E.2d 336
 
 (2012), a transcript was unavailable for nearly the entire habitual felon phase of a criminal proceeding. We remanded for a new habitual felon hearing, holding that the "almost complete lack of a transcript or adequate alternative narration of the habitual felon phase of the proceedings in the lower court precludes our ability to review defendant's contentions on the habitual felon hearing and precludes any meaningful appellate review."
 

 Id.
 

 at 356
 
 ,
 
 721 S.E.2d at 343
 
 .
 

 The present action provides an even clearer case of prejudice than that existing in either
 
 King
 
 or
 
 Hobbs.
 
 It bears repeating that here we are not called upon to determine how significant a missing
 
 portion
 
 of the transcript is to the appellant's ability to obtain meaningful review. Instead, we are dealing with a case in which the transcript
 
 in its entirety
 
 is missing and cannot be adequately reconstructed.
 

 Holly Hill cites to
 
 In re Wright,
 

 64 N.C.App. 135
 
 ,
 
 306 S.E.2d 825
 
 (1983), in support of its argument that Respondent has failed to establish prejudice. In
 
 Wright,
 
 the respondents challenged the constitutionality of several statutory provisions providing for the termination of parental rights. On appeal, the respondents asserted that they were entitled to a new hearing due to an equipment malfunction that rendered unintelligible the entire recording of their termination hearing, thereby requiring the parties to reconstruct the record. We held that the respondents had failed to demonstrate that the lack of a hearing transcript prejudiced them given that it was "apparent from the pleadings and assignments of error that [the appellants'] reliance from the outset has been on the unconstitutionality of the statutes proceeded under, rather than on any evidence of their's or any weakness in the petitioner's evidence."
 
 Id.
 
 at 138,
 
 306 S.E.2d at 827
 
 .
 

 *21
 
 Thus, the issues raised by the appellants in
 
 Wright
 
 were unrelated to the substance of the evidence actually presented at the hearing. Here, conversely, Respondent is expressly contending that the unavailability of a transcript prejudiced him by depriving him of the ability to determine whether any potentially meritorious issues exist for appellate review.
 

 Finally, we reject Holly Hill's argument that Respondent has failed to demonstrate prejudice because he did not identify any specific errors or defects in the involuntary commitment order. In its brief, Holly Hill makes the following assertions in support of this proposition: "The purpose of a verbatim transcript is to be able to review the entire proceeding and determine whether there was error during the trial. Without an allegation of error in [the] trial or in the order, there is no need for a transcript." (Internal citation omitted).
 

 Under this circular logic, an appellant would never be able to show prejudice in cases where-as here-the absence of a transcript renders the appellant unable to determine whether any errors occurred in the trial court that would necessitate an appeal in the first place. In such cases, the prejudice is the inability of the litigant to determine whether an appeal is even appropriate and, if so, what arguments should be raised.
 
 See
 

 Neely,
 

 21 N.C.App. at 441
 
 ,
 
 204 S.E.2d at 532
 
 .
 

 Accordingly, we conclude that Respondent has demonstrated that he was prejudiced by the lack of a verbatim transcript from the 14 May 2015 hearing and, as a result, is unable to obtain meaningful appellate review of his involuntary commitment. Therefore, he is entitled to a new hearing.
 

 Conclusion
 

 For the reasons stated above, we vacate the trial court's 16 May 2015 order and remand for a new commitment hearing.
 

 VACATED AND REMANDED.
 

 Judges ELMORE and HUNTER, JR. concur.
 

 [1]
 

 The Supreme Court explained that "[i]nasmuch as defendant admitted shooting the victim, the focus of his defense was his intent. The missing part of the transcript was not relevant to this issue."
 
 Id.
 
 at 17,
 
 530 S.E.2d at 817
 
 .