# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE No.: | 2017AP1720-CR |

| | |
|---|---|
| COMPLETE TITLE: | State of Wisconsin, |
| | Plaintiff-Appellant, |
| | v. |
| | Robert James Pope, Jr., |
| | Defendant-Respondent-Petitioner. |

REVIEW OF DECISION OF THE COURT OF APPEALS
Reported at 385 Wis. 2d 211, 923 N.W.2d 177
(2018 – unpublished)

| | |
|---|---|
| OPINION FILED: | December 17, 2019 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | September 6, 2019 |

| | |
|---|---|
| SOURCE OF APPEAL: | |
| COURT: | Circuit |
| COUNTY: | Milwaukee |
| JUDGE: | Jeffrey A. Conen |

JUSTICES:

ZIEGLER, J., delivered the majority opinion of the Court, in which ROGGENSACK, C.J., KELLY and HAGEDORN, JJ., joined. BRADLEY, REBECCA GRASSL, J., filed a dissenting opinion, in which BRADLEY, ANN WALSH and DALLET, JJ., joined.

NOT PARTICIPATING:

ATTORNEYS:

For the defendant-respondent-petitioner, there were briefs filed by *Andrea Taylor Cornwall*, assistant state public defender. There was an oral argument by *Andrea Taylor Cornwall*.

For the plaintiff-appellant, there was a brief filed by *Daniel J. O'Brien*, assistant attorney general; with whom on the brief was *Joshua L. Kaul*, attorney general. There was an oral argument by *Daniel J. O'Brien*.

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No. 2017AP1720-CR
(L.C. No. 1996CF960574)

STATE OF WISCONSIN : IN SUPREME COURT

State of Wisconsin,

     Plaintiff-Appellant,

  v.

Robert James Pope, Jr.,

     Defendant-Respondent-Petitioner.

**FILED**

**DEC 17, 2019**

Sheila T. Reiff
Clerk of Supreme Court

ZIEGLER, J., delivered the majority opinion of the Court, in which ROGGENSACK, C.J., KELLY and HAGEDORN, JJ., joined. BRADLEY, REBECCA GRASSL, J., filed a dissenting opinion, in which BRADLEY, ANN WALSH and DALLET, JJ., joined.

REVIEW of a decision of the Court of Appeals. *Affirmed.*

¶1 ANNETTE KINGSLAND ZIEGLER, J. This is a review of an unpublished opinion of the court of appeals, State v. Pope, No. 2017AP1720-CR, unpublished slip op. (Wis. Ct. App. Nov. 13, 2018), reversing the Milwaukee County circuit court's[1] order. The circuit court vacated Robert James Pope, Jr.'s ("Pope") 1996

---

[1] The Honorable Jeffrey A. Conen presided over the postconviction motion. Other circuit court judges presided over the trial, sentencing, and earlier motions in this case. But only the postconviction order is before this court on review.

judgment of conviction for two counts of first-degree intentional homicide, party to a crime, and granted Pope's postconviction motion for a new trial. The circuit court concluded that a new trial was necessary because there was no transcript of Pope's 1996 jury trial available. The court of appeals reversed and reinstated Pope's conviction. The court of appeals concluded that Pope was not entitled to a new trial because he failed to meet his burden to assert a facially valid claim of error. We affirm the court of appeals.

¶2 Under State v. Perry and State v. DeLeon, when a transcript is incomplete, a defendant may be entitled to a new trial, but only after the defendant makes a facially valid claim of arguably prejudicial error. Perry, 136 Wis. 2d 92, 101, 401 N.W.2d 748 (1987); DeLeon, 127 Wis. 2d 74, 377 N.W.2d 635 (Ct. App. 1985). This court must decide whether the Perry/DeLeon procedure applies even when the entire trial transcript is unavailable. Pope argues that the Perry/DeLeon procedure does not apply, and that courts should presume prejudice when the entire transcript is unavailable. The State argues that under the Perry/DeLeon procedure Pope is not entitled to a new trial because he has not asserted a facially valid claim of arguably prejudicial error.

¶3 We decline to presume prejudice when the entire trial transcript is unavailable. We conclude that the Perry/DeLeon procedure applies whether all or a portion of a transcript is unavailable. We also decline to create an exception to the Perry/DeLeon procedure for Pope because the transcript is

2

unavailable due to Pope's own delay. Thus, we affirm the court of appeals.

## I. FACTUAL BACKGROUND

¶4 On September 27, 1995, City of Milwaukee Police Officers William Walsh and John Krason responded to reports of a shooting at a house. When they arrived at the house, the officers found Anthony Gustafson and Joshua Viehland suffering from multiple gunshot wounds. Both young men were pronounced dead at the scene of the crime.

¶5 On January 12, 1996, the State filed a criminal complaint against Pope, charging him with two counts of first-degree intentional homicide while armed, party to a crime, contrary to Wis. Stat. §§ 940.01(1), 939.63, and 939.05 (1995-96).[2] Since there is no trial transcript available, the following allegations are drawn from the criminal complaint only. The complaint alleged that Pope, Pope's girlfriend J.R., I.G., D.K., and D.R. all plotted to kill Joshua Viehland because Viehland threatened their friend. According to J.R.'s statement to officers, Pope told her that he would protect her from Viehland. According to I.G.'s statement to officers, the five met at a house to discuss Viehland's threats. J.R. told them all that if they did not shoot Viehland and Jessie Letendre, she and Pope would do it. The complaint alleges that the five made

---

[2] Where relevant, we reference the 1995-96 version of the Wisconsin Statutes. All other references to the Wisconsin Statutes are to the 2015-16 version unless otherwise indicated.

a plan to call Letendre and have Letendre and Viehland meet them at the house. I.G.'s statement to police was that D.R. called Letendre from a phone booth. D.R. kept talking to Letendre at the phone booth and J.R. drove Pope, I.G., and D.K. to the house.

¶6 Pope, I.G., and D.K. hid in the house, and J.R. waited in a car down the hill. At the house, Pope asked what the guys they were going to kill looked like. He had never met them. D.K. told Pope that they were waiting for a bald, white man with glasses. The complaint alleges that two people approached the house. As it turned out, these two men were Viehland and Gustafson, not Letendre. Pope rounded a corner and fired his gun at them. Pope's gun jammed and then D.K. started firing shots. D.K. stated that he shot Viehland, and then shot the other man, not knowing who he was. I.G. stated that when he rounded the corner, he saw a young man lying on the floor. He did not recognize him. He then saw another man fall. I.G. saw this man was Viehland, and then shot him in the head. I.G., D.K., and Pope ran to the car and J.R. drove them away.

¶7 J.R. stated that Pope sat in the front seat with her and that he was excited and breathing heavily. He told her that they had shot two men, and he thought they were dead. Pope told J.R. that he had fired one shot into a man's chest and then his gun jammed; that he did not care who died because he did not know them. Pope threw a gun in the river and the group dispersed, congratulating one another.

4

## II.  PROCEDURAL POSTURE

¶8    The charges against Pope proceeded to trial.  On May 31, 1996, the jury returned its verdict and found Pope guilty of two counts of first-degree intentional homicide as a party to the crime.  But the jury did not find that the State proved Pope committed either offense while using a dangerous weapon.

¶9    On July 2, 1996, the circuit court sentenced Pope to life imprisonment without parole.  That same day, Pope and his trial counsel signed an SM-33 form.[3]  The form indicated that Pope intended to pursue postconviction relief and that counsel would timely file a formal notice of intent to pursue postconviction relief within 20 days——or by July 22, 1996.  The form also indicated that Pope knew the notice had to be filed within 20 days.  If trial counsel had actually filed the notice of intent to pursue postconviction relief, it would have set in motion the procedures for obtaining a trial transcript and appointment of appellate counsel.  See Wis. Stat. § (Rule) 809.30(2)(c)-(h) (1995-96).[4]  But trial counsel did not file that

---

[3] The SM-33 form has since been replaced by CR-233 Notice of Right to Seek Postconviction Relief adopted by the Wisconsin Judicial Conference.

[4] Rule 809.30(2) (1995-96) provided, as follows:

   (2)  Appeal or postconviction motion by defendant.  (a) A defendant seeking postconviction relief in a felony case shall comply with this section.  Counsel representing the defendant at sentencing shall continue representation by filing a notice under par. (b) if the defendant desires to

5

pursue postconviction relief unless sooner discharged by the defendant or by the trial court.

(b) Within 20 days of the date of sentencing, the defendant shall file in the trial court and serve on the district attorney a notice of intent to pursue postconviction relief. . . .

(c) Within 5 days after a notice under par. (b) is filed, the clerk shall:

1. If the defendant requests representation by the state public defender for purposes of postconviction relief, send to the state public defender's appellate intake office a copy of the notice, a copy of the judgment or order specified in the notice, a list of the court reporters for each proceeding in the action in which the judgment or order was entered and a list of those proceedings in which a transcript has been filed in the court record at the request of trial counsel.

. . .

(e) Within 30 days after the filing of a notice under par. (b) requesting representation by the state public defender for purposes of postconviction relief, the state public defender shall appoint counsel for the defendant and order a transcript of the reporter's notes, except that if the defendant's indigency must first be determined or redetermined, the state public defender shall do so, appoint counsel and order transcripts within 50 days after the notice under par. (b) is filed.

(f) A defendant who does not request representation by the state public defender for purposes of postconviction relief shall order a transcript of the reporter's notes within 30 days after filing a notice under par. (b).

. . .

(g) The court reporter shall file the transcript with the trial court and serve a copy of the transcript on the defendant within 60 days of the ordering of the transcript. Within 20 days of the

6

notice of intent to pursue postconviction relief, as required by Wis. Stat. § 809.30(2)(b), in order to commence a direct appeal. As a result, Pope's direct appeal rights expired and no appeal was initiated.

¶10 On September 16, 1997, about 14 months after the filing deadline, Pope finally made his first effort to correct trial counsel's error. He filed a pro se motion to extend the deadline for filing the notice of intent to pursue postconviction relief in the court of appeals. Pope argued that his trial counsel had failed to file the notice of intent, despite Pope's instructions that he file it. Pope attached to his motion a letter he had received from the State Public Defender's office that explained,

> When [a Notice of Intent] is timely filed, appellate counsel is appointed, transcripts are ordered and the appeal proceeds in the normal fashion. If the Notice of Intent is not filed within 20 days of sentencing, it is necessary to ask the court of appeals to extend the time by filing a motion.

The letter also explained that the State Public Defender had "no idea why the Notice was not timely filed and therefore you are going to have to explain the reason to the court in a motion to extend the time for filing the Notice." The letter also instructed Pope to send any order granting the extension to their Appellate Intake office.

---

> ordering of a transcript of postconviction proceedings brought under sub. (2) (h), the court reporter shall file the original with the trial court and serve a copy of that transcript on the defendant.

7

¶11 But, on September 25, 1997, the court of appeals denied Pope's motion. It reasoned:

> Even assuming the truth of Pope's representations regarding the performance of trial counsel, Pope has failed to provide the court with a sufficient explanation as to why, when counsel failed to initiate postconviction proceedings timely, he did not attempt to commence postconviction proceedings on his own. The court can see nothing in the motion that would warrant a fifteen-month[5] delay in commencing postconviction proceedings.

¶12 Thus, the court of appeals concluded that Pope had not shown good cause for his delay in bringing the motion. It denied the motion. Importantly, this 1997 court of appeals' decision is not before this court for review. Rather, we review its 2018 decision concluding that Pope is not entitled to a new trial because he failed to assert a facially valid claim of error. Since 1997 Pope has made multiple attempts to reinstate his appeal rights. The procedural history of his case is lengthy. But it is Pope's inaction for 14 months from July 1996 to September 1997 that partially controls the outcome in this case——both then in September 1997, and now in 2019.

¶13 On October 15, 1997, Pope filed a pro se Wis. Stat. § 974.06 motion to reinstate his rights to appeal in the circuit court, arguing that trial counsel was ineffective for not filing

---

[5] The court of appeals has repeatedly referred to a 15-month delay in this case. That is not accurate. The deadline to file the notice of intent was July 22, 1996. Pope filed his pro se motion on September 16, 1997——just under 14 months later. But the difference between 14 and 15 months delay is immaterial to our analysis in this case.

8

a notice of intent to pursue postconviction relief. The circuit court denied the motion, citing the court of appeals' September 1997 decision. On November 5, 1997, Pope filed a notice of appeal. As part of that appeal, Pope filed a statement on transcript, which the court of appeals construed as a motion to waive transcript fees. The court of appeals remanded to the circuit court to determine whether Pope was entitled to a waiver of transcript fees under Wis. Stat. § 814.29(1).[6] The circuit court issued findings of fact and conclusions of law. It concluded that Pope had not made a claim for relief and was not entitled to free transcripts. On December 23, 1997, the court of appeals noted that Pope had not yet filed a statement on transcript as required under Wis. Stat. §§ (Rules) 809.11(4) and 809.16,[7] and ordered him to do so. On January 2, 1998, Pope

---

[6] Wisconsin Stat. § 814.29(1)(a) (1995-96) provided as follows:

> Any person may commence, prosecute or defend any action or proceeding in any court, or any writ of error or appeal therein, without being required to give security for costs or to pay any service or fee, upon order of the court based on a finding that because of poverty the person is unable to pay the costs of the action or proceeding, or any writ or error or appeal therein, or to give security for those costs.

[7] Rule 809.11(4) (1995-96) provided as follows:

> (4) Statement on transcript. The appellant shall file with the clerk of the court of appeals within 10 days of the filing of the notice of appeal in the trial court, a statement that a transcript is not necessary for prosecution of the appeal or a statement by the court reporter that the transcript or designated portions thereof have been ordered,

filed a statement on transcript, asserting that the only transcript necessary for his appeal was the sentencing transcript.

¶14 On March 5, 1999, the court of appeals affirmed the circuit court's order denying Pope's Wis. Stat. § 974.06 motion to reinstate his right to appeal. The court of appeals once again concluded that "[b]ecause Pope failed to provide any reason for his fifteen-month delay before seeking § 974.06 relief, he waived his right to appeal . . . ." Then Pope filed a petition for review with this court. On March 10, 1999, we

arrangements have been made for the payment by the appellant of the cost of the original transcript and all copies for other parties, the date on which the transcript was ordered and arrangements made for payment, and the date on which the transcript is due. The appellant shall file a copy of the statement on transcript with the clerk of the trial court within 10 days of the filing of the notice of appeal.

Rule 809.16(1) (1995-96) provided as follows:

Within 10 days of the filing of the notice of appeal, the appellant shall make arrangements with the reporter for the preparation of a transcript of the reporter's notes of the proceedings and service of copies and file in the court a designation of the portions of the reporter's notes that have been ordered. Any other party may file within 10 days of service of the appellant's notice, a designation of additional portions to be included in the transcript. The appellant shall file within 10 days of the service of the other party's designation the statement required by s. 809.11(4) covering the other party's designations. If the appellant fails or refuses to order the designated portions, the other party may order the portions or file a motion with the trial court for an order requiring the appellant to do so.

10

denied it as untimely. We reasoned that the petition essentially asked this court to review the court of appeals' September 1997 decision, meaning it should have been filed back in 1997.

¶15 Four years later, on June 20, 2003, Pope filed a pro se motion to extend the time for filing his postconviction motion in the court of appeals. On July 11, 2003, the court of appeals denied the motion, concluding that the issue was "settled and will not be relitigated."

¶16 Eleven years later, on July 21, 2014, Pope filed a Knight[8] petition for a writ of habeas corpus. He argued that his direct appeal rights should be reinstated because trial counsel was ineffective for not filing a notice of intent. On November 13, 2015, the court of appeals remanded to the circuit court for fact-finding. The circuit court appointed counsel for Pope. After a hearing, the circuit court issued findings of fact on June 7 and 28, 2016. The circuit court found that: (1) Pope was represented at sentencing by counsel; (2) Pope and his counsel filed the SM-33 form on July 2, 1996, indicating Pope's intent to pursue postconviction relief; (3) his counsel did not file the notice of intent; (4) his counsel's practice was to file a defendant's notice of intent personally or via mail; (5) Pope wrote two letters to his counsel on July 8 and 18, 1996, regarding the status of his appeal and transcripts, of which his counsel had no memory; (6) his counsel was publicly reprimanded

---

[8] State v. Knight, 168 Wis. 2d 509, 484 N.W.2d 540 (1992).

11

for his representation of clients in other postconviction matters; and (7) Pope had been attempting pro se to get his appeal rights reinstated since 1996.[9] Additionally, the circuit court found that: (1) Pope's testimony regarding his efforts to reach his counsel was credible; (2) his counsel did not follow up with Pope or preserve his files; and (3) there was no evidence that his counsel filed a notice of intent.

¶17 Following the circuit court's findings, on August 16, 2016, Pope and the State filed a joint stipulation for reinstatement of Pope's direct appeal deadlines and dismissal of the habeas petition. On September 29, 2016, based on the parties' stipulation, the court of appeals ordered that Pope's direct appeal rights be reinstated and dismissed the habeas petition. On October 4, 2016, 20 years after his conviction, Pope filed a notice of intent to pursue postconviction relief in the circuit court. He also ordered trial transcripts for the first time. But the court reporters no longer had any notes from Pope's 1996 jury trial. In the end, Pope obtained

---

[9] While some might argue that this factual finding should change the outcome of our review here, the circuit court's factual finding cannot change the law of Pope's case. In 1997, the court of appeals concluded that Pope delayed in bringing his motion to extend the deadline to file a notice of intent and he failed to show good cause for his delay.

transcripts of his preliminary hearing and sentencing only. The transcript of Pope's 1996 jury trial is now unavailable.[10]

¶18 On March 7, 2017, Pope filed a Wis. Stat. § (Rule) 809.30 postconviction motion for a new trial. Pope argued that the lack of a trial transcript denied him his constitutional and statutory right to appeal his convictions and denied him due process under the Fourteenth Amendment to the United States Constitution. The State opposed the motion and argued that, under Perry, Pope was not entitled to a new trial because he failed to make a claim of error. On July 19, 2017, the postconviction court held a hearing and ordered a new trial. It issued a written order two days later. The postconviction court concluded that, without even a portion of the trial transcript, it would be impossible to make a claim of error. Thus, it concluded there was "no other option but to order a new trial in

---

[10] Pursuant to Supreme Court Rule 72.01(47), court reporters are required to keep their notes for 10 years after a court proceeding. Pope did not order a trial transcript until over 20 years after his trial. Thus, by the time he ordered the trial transcript, it was unavailable. Supreme Court Rule 72.01(47) provides as follows:

SCR 72.01 Retention of original record.

   Except as provided in SCR 72.03 to 72.05, the original paper records of any court shall be retained in the custody of the court for the following minimum time periods: . . .

   (47) Court reporter notes. Verbatim steno-graphic, shorthand, audio or video notes produced by a court reporter or any other verbatim record of in-court proceedings: 10 years after the hearing.

13

this case." The court of appeals applied Perry and reversed. Pope, No. 2017AP1720-CR, unpublished slip op. It concluded: "Pope had the initial burden in his postconviction motion of claiming some facially valid claim of error. He failed to do so." Id., ¶38.

¶19 Pope filed a petition for review in this court. We granted the petition.

### III. STANDARD OF REVIEW

¶20 The circuit court's decision whether to grant a new trial due to lack of transcript is discretionary. Perry, 136 Wis. 2d at 109. It will be upheld if "due consideration is given to the facts then apparent, including the nature of the claimed error and the colorable need for the missing portion——and to the underlying right under our constitution to an appeal." Id. A circuit court erroneously exercises its discretion if it commits an error of law. State v. Raye, 2005 WI 68, ¶16, 281 Wis. 2d 339, 697 N.W.2d 407.

### IV. ANALYSIS

#### A. The Right To An Appeal

¶21 The Wisconsin Constitution guarantees the right to an appeal. Pursuant to Article I, Section 21(1) of the Wisconsin Constitution, "Writs of error shall never be prohibited, and shall be issued by courts as the legislature designates by law." See also Perry, 136 Wis. 2d at 98. The legislature designated the court of appeals as the court where the right to appeal

14

should be exercised. See Wis. Stat. § 808.02 ("A writ of error may be sought in the court of appeals.") Regarding criminal appeals, this court has said, "Basic to a criminal appeal is the statement of the errors that an aggrieved defendant alleges were committed in the course of the trial and a showing that such errors (or error) were prejudicial." Perry, 136 Wis. 2d at 99. Accordingly, when a defendant asserts that an arguably prejudicial error occurred at trial, the defendant has a constitutional right to assert that prejudicial error on appeal.

¶22 A defendant's argument regarding such arguably prejudicial trial error is based upon and identified in the trial transcript. Thus, a transcript of the trial proceedings is crucial to such an appeal.

> In order that the right [to an appeal] be meaningful, our law requires that a defendant be furnished a full transcript——or a functionally equivalent substitute that, in a criminal case, beyond a reasonable doubt, portrays in a way that is meaningful to the particular appeal exactly what happened in the course of trial.

Perry, 136 Wis. 2d at 99.

¶23 Because a transcript is crucial to the right to an appeal, Wisconsin courts provide additional protection for appellants when they do not have a complete transcript. Id. When a trial transcript is incomplete, the appellant need only assert a facially valid claim of arguably prejudicial error in the unavailable transcript. Id. at 108-09. The appellant need not actually prove a claim of error. Id. Rather, once the appellant has asserted a facially valid claim of arguably prejudicial error, the appellant triggers a procedure to

15

reconstruct the record. Id. If reconstruction is impossible, then the appellant gets a new trial. Id. We discuss that procedure in detail below.

### B. The Perry/DeLeon Procedure

¶24 This court's decision in Perry sets forth the procedure that parties and the court must follow when a record is incomplete during post-trial proceedings. Perry is best understood in conjunction with its predecessor, State v. DeLeon.

¶25 In DeLeon a defendant sought reversal of his conviction for first-degree sexual assault because the court reporter somehow lost approximately 15 minutes of trial testimony. DeLeon, 127 Wis. 2d at 76. His trial was to the court, not a jury. The circuit court denied DeLeon's motion for a new trial. Id. It concluded that, rather than a new trial, the proper remedy was to recall the witnesses whose testimony was lost and reconstruct the record. Id. The court of appeals affirmed. Id. It also set forth the procedure Wisconsin courts should follow in similar situations.

¶26 First, the appellant must allege a facially valid claim of arguably prejudicial error. The appellant need not demonstrate actual prejudice, but nonetheless must make an adequate showing.

> Before any inquiry concerning missing notes takes place, common sense demands that the appellant claim some reviewable error occurred during the missing portion of the trial. Obviously, the trial court need not conduct an inquiry if the appellant has no intention of alleging error in the missing portion of the proceedings. If, however, the trial court

16

> determines that the appellant has at least a facially valid claim of error, the inquiry should take place.

DeLeon, 127 Wis. 2d at 80 (emphasis added).  If this prejudice is not so demonstrated, then the analysis ends.

¶27 If, however, the circuit court concludes that the defendant has demonstrated a facially valid claim of arguably prejudicial error, then the court must proceed to make the discretionary determination of whether the missing record can be reconstructed.  DeLeon, 127 Wis. 2d at 81.  This determination is case-specific.  Id.  The circuit court utilizes its discretion to determine what information may be relevant to the issue at hand, but some considerations might include "the length of the missing transcript, the availability of witnesses and trial counsel, and the amount of time which had elapsed . . . ." Id.  If the circuit court determines that record reconstruction is impossible, then it must order a new trial.  Id.  If the circuit court determines that record reconstruction is possible, then the appellant bears the burden to reconstruct the record. Id.

¶28 When record reconstruction is possible, the circuit court proceeds to determine what the record would have been. For example, the appellant may draft an affidavit describing the missing record.  Id.  The respondent may then file objections, propose amendments, or approve the affidavit.  Id.  The parties may also draft and file a joint statement.  Id.  If the parties dispute the record, then the circuit court may attempt to resolve the dispute.  Id.  The circuit court may not speculate

17

regarding the contents of the original record.  Id.  Rather, the circuit court must try to establish what the record actually was, relying on the parties' submissions, its own recollection, hearings, counsel, and other sources.  Id. at 81-82.  When reconstructing the record, the level of proof required is the same as at trial.  Id. at 82.  That means, in a criminal case, the circuit court "must be satisfied beyond a reasonable doubt that the missing testimony has been properly reconstructed." Id.  If the circuit court is so satisfied beyond a reasonable doubt, then the record is reconstructed accordingly.  Id.  If not, then the circuit court must order a new trial.  Id.  Thus, the court of appeals in DeLeon established a procedure for record reconstruction.

¶29 In Perry this court was called upon to determine whether the DeLeon procedure should apply when portions of the court reporter's trial notes were destroyed in the mail.  Perry, 136 Wis. 2d at 95-96.  Perry, unlike DeLeon, had a trial to a jury.  Id. at 95.  About one-eighth of the trial transcript was lost, including the testimony of two witnesses and closing arguments.  Id. at 107.  Perry moved for a new trial, arguing that the transcript deficiency alone denied him his right to appeal.  Id. at 96.  The circuit court denied the motion, concluding that the available portions of the transcript were sufficient to proceed on appeal.  Id. at 96-97.  The court of appeals reversed, concluding that the transcript was insufficient and declining to follow the DeLeon procedure.  Id. at 97, 102.  The court of appeals concluded that DeLeon should

18

be limited to its facts and that a remand to the trial court to undergo the DeLeon procedure would serve no purpose. Id. at 102. On appeal to this court, we affirmed the court of appeals' determination, but clarified that the DeLeon procedure is not limited to its facts and indeed must be followed. Id. We stated, "[T]he essence of DeLeon is its methodology, which is as appropriate for this case as it was for DeLeon." Id. Thus, in Perry, we concluded that the DeLeon procedure "can be applied to a broad spectrum of cases." Id. at 102-03. The outcomes of the procedure may vary; whether the record can be reconstructed is an inquiry that depends on the facts of each case. But the Perry/DeLeon procedure guides each inquiry.

¶30 Thus, in Perry we concluded that the procedure first established in DeLeon would be applicable "to a broad spectrum of cases." Regarding its threshold requirement, we emphasized that, while the appellant need not demonstrate actual prejudice, the appellant must allege a facially valid claim of arguably prejudicial error in order to trigger the reconstruction portion of the Perry/DeLeon procedure. Perry, 136 Wis. 2d at 108-09. More than 30 years later, we are called upon to now decide whether this procedure applies when the entire trial transcript is unavailable.

C. The Perry/DeLeon Procedure Applies.

¶31 Pope argues that the Perry/DeLeon procedure should not apply to this case because the unavailability of the entire trial transcript prevents appellate counsel from determining whether any arguably prejudicial errors exist for appeal.

19

Instead, Pope argues that courts should here presume prejudice because the entire trial transcript is unavailable. The State argues that the Perry/DeLeon procedure applies and Pope must first assert a facially valid claim of arguably prejudicial error. We agree with the State. We decline to presume prejudice when the entire trial transcript is unavailable. We conclude that the Perry/DeLeon procedure applies to a "broad spectrum of cases" including when the entire trial transcript is unavailable. This conclusion is consistent with both Perry and DeLeon. We find additional support for this conclusion in federal law and appellate procedure generally.

¶32 Perry made clear that the Perry/DeLeon procedure is broadly applicable. Perry, 136 Wis. 2d at 102-03. It also emphasized that the appellant's initial burden to assert a facially valid claim of arguably prejudicial error was necessary to trigger that procedure. Id. at 108. Additionally, for the court of appeals in DeLeon, putting the initial burden on the appellant was a matter of "common sense." DeLeon, 127 Wis. 2d at 80. We agree and conclude that "common sense demands that the appellant claim some reviewable error occurred" whether a portion or an entire transcript is missing. Id. Logic dictates that when the defendant claims an arguably prejudicial error occurred in the missing trial transcript, that missing transcript is critical to the defendant's argument, regardless of the missing portion's size——large, small, or all.

¶33 There is nothing exceptional about requiring the appellant to assert a facially valid claim of arguably

20

prejudicial error.  This is consistent with appellate procedure generally.  All appellants must make a valid claim for appeal at some point.  Put simply, there is no appeal without a claim. Additionally, under the Perry/DeLeon procedure, the appellant does not need to actually prove a claim of error.  The circuit court requires only an assertion of a facially valid claim in order to trigger record reconstruction or, potentially, a new trial.  Thus, rather than setting an exceptional burden, the Perry/DeLeon procedure merely requires some arguable showing before the efforts of reconstruction are undertaken.  If an adequate record cannot be so reconstructed, then, unlike a traditional appellant who would need to prove the right to relief on the merits of the argument presented, the appellant with an incomplete transcript would receive the requested relief based upon the missing record.

¶34 Nor is there anything extraordinary about placing the initial burden to present facts on the appellant or, at the reconstruction stage, requiring the defendant to take the laboring oar even when the entire transcript is unavailable.  In fact, federal courts also place the burden to reconstruct the record on the appellant.  Federal Rule of Appellate Procedure 10(c) establishes the procedure for reconstructing a record when a transcript is unavailable:

> If the transcript of a hearing or trial is unavailable, the appellant may prepare a statement of the evidence or proceedings from the best available means, including the appellant's recollection.  The statement must be served on the appellee, who may serve objections or proposed amendments within 14 days

21

after being served. The statement and any objections or proposed amendments must then be submitted to the district court for settlement or approval. As settled and approved, the statement must be included by the district clerk in the record on appeal.

Fed. R. App. P. 10(c). This procedure is broadly applicable in federal appeals, and it is very similar to the Perry/DeLeon procedure.

¶35 Indeed, the court of appeals in DeLeon discussed Rule 10 prior to concluding that Wisconsin courts should use a similar procedure. The court of appeals summarized Rule 10 and a case applying it. DeLeon, 127 Wis. 2d at 78-80. It then stated:

> Using the Federal Rules of Appellate Procedure and the Cole[11] case as guides, we now develop the procedure that trial courts should follow in Wisconsin. Although the appeal is a criminal case, the same procedure will apply in civil cases.
>
> Before any inquiry concerning missing notes takes place, common sense demands that the appellant claim some reviewable error occurred during the missing portion of the trial.

Id. at 80. Thus, from its inception, Wisconsin courts have considered the Perry/DeLeon procedure, including its threshold claim-of-error requirement, to be consistent with the federal lead. We agree, and we will continue to follow the federal lead.

¶36 Pope's request that we presume prejudice could actually provide the most relief to offenders who are serving the longest sentences. In Wisconsin, court reporters need only

---

[11] Cole v. United States, 478 A.2d 277 (D.C. 1984).

22

maintain their notes for ten years. See SCR 72.01(47). If we were to presume prejudice when the entire transcript is unavailable, there would be nothing to stop criminal defendants from sitting on their hands for ten years, and then claiming that they told trial counsel to file a notice of intent. Under Pope's proposed rule, criminal defendants would automatically be entitled to a new trial after ten years regardless of their sentence because their transcripts would be unavailable if not previously requested. We decline to provide such relief to those who might unduly benefit from sitting on their right to request appellate relief contemporaneously (with the best available evidence, testimony, and transcripts), and instead wait until no transcript is available.

¶37 Pope argues that requiring appellate counsel to assert a facially valid claim of arguably prejudicial error conflicts with counsel's ethical and statutory obligations. See SCR 20:3.1(a)(1) (prohibiting lawyers from "knowingly advanc[ing] a claim or defense that is unwarranted"); and Wis. Stat. § (Rule) 809.32 (requiring appellate counsel who concludes that a direct appeal would be frivolous and without merit, upon the client's request, to file a no-merit report identifying each potential claim and why it lacks merit). We disagree; there is no conflict. The Perry/DeLeon procedure requires a facially valid claim in order to proceed. It does not require counsel to do anything unethical or illegal. Rather, the Perry/Leon procedure is consistent with counsel's obligations. Under each framework, if there is no valid claim, then the litigation must end.

23

¶38 We therefore decline to presume prejudice when the entire trial transcript is unavailable. We conclude that the Perry/DeLeon procedure applies even when the entire trial transcript is unavailable. This conclusion is consistent with Perry and DeLeon, federal law, and appellate procedure generally.

D. The Transcript Is Unavailable Due To Pope's Delay.

¶39 Pope argues that we should carve out an exception to the Perry/DeLeon threshold requirement that the appellant assert a facially valid claim of arguably prejudicial error when the entire transcript is unavailable. We decline to create an exception to the Perry/DeLeon procedure for Pope because, as we explain below, the transcript is unavailable due to his delay.

¶40 To begin, creating an exception to the Perry/DeLeon procedure when the lack of transcript is attributable to the appellant is inconsistent with Perry and DeLeon. Both cases were premised on the fact that the defendants were not at fault for the lost transcript. In DeLeon the court reporter lost some of her trial notes. 127 Wis. 2d at 76. The court of appeals concluded, "Where, as here, a portion of the record is lost through no fault of the aggrieved party, that party should not be made to bear the burden of this loss." Id. at 77 (emphasis added). And in Perry, portions of the court reporter's trial notes were lost in the mail. 136 Wis. 2d at 96. Again, the notes were lost "through no fault of the aggrieved party," the appellant. DeLeon, 127 Wis. 2d at 77. Furthermore, Perry "ha[d] done everything that reasonably could be expected in

24

order to perfect his appeal." Perry, 136 Wis. 2d at 108. Thus, neither case supports the proposition that an appellant should automatically get a new trial when the appellant caused the transcript to be unavailable on appeal. Those cases simply did not contemplate the situation presented here. Nor can it be said that Pope "has done everything that reasonably could be expected in order to perfect his appeal." Id.

¶41 In this case, the appellant, Pope, caused the transcript to be unavailable because he sat on his rights. First, Pope sat on his rights for 14 months after the notice of intent was due. Pope knew that his notice of intent was due on July 22, 1996. On July 2, 1996, the day of Pope's sentencing, he and his counsel signed the SM-33 form, which indicated that Pope knew the notice of intent had to be filed within 20 days. Additionally, the postconviction court found that Pope wrote two letters to counsel on July 8 and 18, 1996, regarding the status of his appeal and transcripts. Pope knew that the deadline to file his notice of intent was approaching.

¶42 That deadline, July 22, 1996, came and went and counsel did not file the notice of intent. Pope could have immediately moved for an extension of the deadline. But he did not. Rather, Pope sat on his rights for 14 months, until September 1997. Even then, Pope could have argued that he had good cause for his 14-month delay. But he did not. Thus, the court of appeals denied his motion to extend the deadline because he did not show good cause. It concluded:

> Even assuming the truth of Pope's representations regarding the performance of trial counsel, Pope has failed to provide the court with a sufficient explanation as to why, when counsel failed to initiate postconviction proceedings timely, he did not attempt to commence postconviction proceedings on his own.

The court of appeals denied Pope's motion because he delayed 14 months in bringing it and provided no justification. That decision became the law of Pope's case.

¶43 Subsequent decisions of the circuit court, court of appeals, and even this court, cited the court of appeals' September 1997 decision to repeatedly deny Pope's motions to extend the deadline or reinstate his appeal rights. Thus, over 20 years went by and Pope never filed a notice of intent. If Pope had filed a notice of intent, it would have triggered the statutory procedure for ordering a transcript and appointing appellate counsel. See supra note 4 (quoting portions of Wis. Stat. § (Rule) 809.30(2) (1995-96)). But Pope could not file a notice of intent because no court granted his motions to extend the deadline or reinstate his appeal rights due to his 14-month delay.

¶44 Second, Pope failed to order the transcript on his own at any point during the ten years after his trial. Court reporters in Wisconsin are required to keep their trial notes for only ten years. See SCR 72.01(47) (court reporter notes "shall be retained" for "10 years after the hearing"). Pope's trial transcript is unavailable because Pope did not order it at any point during the ten-year period when the court reporter was required to keep it pursuant to SCR 72.01(47). After those ten

26

years passed, the court reporter was not required to and did not, in fact, keep a copy of the trial transcript. The transcript is unavailable in this case because Pope sat on his rights.[12] Accordingly, we decline to create an exception to the Perry/DeLeon procedure——which specifically contemplated a faultless appellant——for Pope because the transcript is unavailable due to his delay.[13]

¶45 In support of his argument that he should be granted a new trial, Pope cites cases from other jurisdictions where the appellant was granted a new trial. But none of those cases supports the proposition that an appellant who causes the transcript to be unavailable should automatically get a new trial. See Cole v. United States, 478 A.2d 277, 279 (D.C. 1984) (appellant timely noticed appeal and ordered a trial transcript, but the court reporter's notes were lost); State v. Yates, 821 S.E.2d 650, 652-53 (N.C. Ct. App. 2018) (appellant timely noticed appeal, but court reporter's recording equipment malfunctioned); Johnson v. State, 524 S.W.3d 338, 339-40 (Tex.

---

[12] The parties' 2016 joint stipulation to reinstate Pope's direct appeal rights and the court of appeals' subsequent order to that effect do not change the fact that the trial transcript is unavailable due to Pope's delay. The stipulation and order permitted Pope to file an appeal. They did not guarantee that Pope's appeal would be successful or that he would automatically win a new trial.

[13] One could argue that Pope is somehow due relief, but that argument would rely on our discretionary authority under Wis. Stat. § 751.06 to reverse a judgment if "the real controversy has not been fully tried" or "it is probable that justice has for any reason miscarried." § 751.06. Neither of those criterion is met here.

27

Ct. App. 2017) (appellant did not abandon his appeal, but "a significant portion of the record had been lost or destroyed through no fault of the appellant . . . "); Johnson v. State, 805 S.E.2d 890, 891-93 (Ga. 2017) (appellant timely moved for a new trial, but the entire trial transcript was destroyed in a fire at the court reporter's house); In re Shackleford, 789 S.E.2d 15, 17 (N.C. Ct. App. 2016) (respondent timely noticed appeal, but the courtroom recording equipment failed, and no court reporter was present); see also People v. Jones, 178 Cal. Rptr. 44, 45 (Cal. Ct. App. 1981) (appellant did not timely appeal, but court of appeal granted appellant's motion for relief and court reporter voluntarily destroyed her notes from appellant's 1973 trial); State v. Hobbs, 660 S.E.2d 168, 169-70 (N.C. Ct. App. 2008) (appellant did not timely notice appeal, but court of appeals allowed appellant's writ petition and court reporter's notes and audiotapes were lost).

¶46 Pope also argues that the burden of his procedural shortcomings should lie with the State because he was acting as a pro se litigant, abandoned by counsel. See Coleman v. Thompson, 501 U.S. 722, 754 (1991) (quoting Murray v. Carrier, 477 U.S. 478, 488 (1986)) ("[I]f the procedural default is the result of ineffective assistance of counsel, the Sixth Amendment itself requires that responsibility for the default be imputed to the State."). Both parties and this court all agree that counsel's failure to file the notice of intent was inexcusable. But that does not excuse Pope's failure to timely move to extend the deadline to file the notice of intent. Nor does it excuse

28

his failure to order the trial transcript for over ten years. Pro se litigants, though acting without counsel, are still required to timely assert their rights. If they do not, then they may forfeit those rights. There are other contexts in Wisconsin law where an appellant's untimeliness forfeits an appeal.

¶47 For example, in State v. Escalona-Naranjo we concluded that an appellant who fails to assert a claim that could have been asserted on direct appeal or a Wis. Stat. § 974.02 motion is barred from subsequently asserting that claim for the first time in a postconviction motion under Wis. Stat. § 974.06. 185 Wis. 2d 168, 173, 517 N.W.2d 157 (1994). In support of imposing the Escalona-Naranjo bar for failure to timely assert a claim, we reasoned:

> Section 974.06(4) was not designed so that a defendant, upon conviction, could raise some constitutional issues on appeal and strategically wait to raise other constitutional issues a few years later. Rather, the defendant should raise the constitutional issues of which he or she is aware as part of the original postconviction proceedings. At that point, everyone's memory is still fresh, the witnesses and records are usually still available, and any remedy the defendant is entitled to can be expeditiously awarded.

Id. at 185-86. Thus, we determined that appellants' rights are best protected when they assert their claims in a timely manner. We concluded that Escalona-Naranjo forfeited his ineffective assistance of trial counsel claim because he failed to timely assert it and did not allege good cause for the delay. Id. at 186.

29

¶48 We did something similar in State ex rel. Flores v. State, 183 Wis. 2d 587, 516 N.W.2d 362 (1994). In that case, we held that once a defendant has been adequately informed of his right to request a no-merit report under Wis. Stat. § (Rule) 809.32, the defendant is presumed to have waived that right unless he exercises it. Id. at 617-18. "A defendant may rebut this presumption by showing exceptional circumstances or good cause . . . ." Id. at 618.

¶49 We have also long held that unreasonable delay may bar a petition for a writ of habeas corpus under the equitable doctrine of laches. See State ex rel. Coleman v. McCaughtry, 2006 WI 49, 290 Wis. 2d 352, 714 N.W.2d 900; see also State ex rel. Lopez-Quintero v. Dittmann, 2019 WI 58, 387 Wis. 2d 50, 928 N.W.2d 480. In sum, there is nothing particularly remarkable about the notion that a pro se litigant cannot sit on his rights.

¶50 Pope knew that his trial counsel needed to file a notice of intent to pursue postconviction relief by July 22, 1996. When trial counsel failed to file the notice of intent, Pope failed to defend his rights for 14 months. When Pope finally filed a motion to extend the deadline to file, the court of appeals denied his motion because he had delayed for 14 months and there was no good cause shown. Thus, Pope did not file a notice of intent for 20 years. Nor did he timely order a trial transcript. Now the trial transcript is unavailable. Accordingly, we decline to create an exception to the

30

Perry/DeLeon procedure for Pope because the transcript is unavailable due to his delay.[14]

## V. CONCLUSION

¶51 We decline to presume prejudice when the entire trial transcript is unavailable. We conclude that the Perry/DeLeon procedure applies whether all or a portion of a transcript is unavailable. We also decline to create an exception to the Perry/DeLeon procedure for Pope because the transcript is unavailable due to Pope's own delay. Thus, we affirm the court of appeals.

*By the Court.*—The decision of the court of appeals is affirmed.

---

[14] The State argued that, if we adopted Pope's exception to the Perry/DeLeon procedure, we should vacate the joint stipulation reinstating Pope's right to direct appeal and remand to the court of appeals to consider a laches defense. Because we decline to create an exception in this case, we do not consider the State's arguments regarding the stipulation or laches.

Additionally, the court of appeals' decision relied in part on Pope's assertion on his 1998 pro se statement on transcript that the only transcript necessary for his appeal was the sentencing transcript. Pope argued that a statement on transcript should not bind a pro se litigant in subsequent appeals. Because we base our conclusions on the Perry/DeLeon procedure and Pope's delay, we do not decide the extent to which a pro se litigant is bound by his assertions on a statement on transcript.

¶52 REBECCA GRASSL BRADLEY, J. *(dissenting).* The Sixth Amendment to the United States Constitution guarantees all criminal defendants the right to effective counsel on direct appeal, even defendants convicted of heinous crimes. Douglas v. California, 372 U.S. 353, 355-58 (1963); Evitts v. Lucey, 469 U.S. 387, 396-97 (1985). The Sixth Amendment's guarantee of the assistance of counsel means that an attorney is "constitutionally ineffective [when he] fail[s] to file a notice of appeal." Roe v. Flores-Ortega, 528 U.S. 470, 477 (2000). When a defendant establishes that his counsel's deficient performance deprived him of his direct appeal, "prejudice is presumed" and his direct appeal rights are restored with "no need for a 'further showing' of his claims' merit." Garza v. Idaho, 139 S. Ct. 738, 744, 747 (2019) (quoted source omitted).[1] "If the defendant told his lawyer to appeal, and the lawyer dropped the ball, then the defendant has been deprived, not of

---

[1] See also Roe v. Flores-Ortega, 528 U.S. 470, 477, 483-84 (2000) (loss of the "entire [appellate] proceeding itself, which a defendant wanted at the time and to which he had a right . . . demands a presumption of prejudice"; "[w]e have long held that a lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable," and "'when counsel fails to file a requested appeal, a defendant is entitled to [a new] appeal without showing that his appeal would likely have had merit'") (quoted source omitted); Rodriquez v. United States, 395 U.S. 327, 330 (1969) ("Those whose right to appeal has been frustrated should be treated exactly like any other appellants; they should not be given an additional hurdle to clear just because their rights were violated at some earlier stage in the proceedings."); see also Strickland v. Washington, 466 U.S. 668, 692 (1984) ("Actual or constructive denial of the assistance of counsel altogether is legally presumed to result in prejudice.").

1

effective assistance of counsel, but of <u>any</u> assistance of counsel on appeal," which is a "per se violation of the sixth amendment." <u>Castellanos v. United States</u>, 26 F.3d 717, 718 (7th Cir. 1994) (citation omitted).

¶53 The majority acknowledges the failure of Robert James Pope Jr.'s trial counsel to file the Notice of Intent to Pursue Postconviction Relief——the prerequisite to the appointment of appellate counsel——which resulted in the deprivation of Pope's constitutionally-guaranteed direct appeal rights. Majority op., ¶9. Nevertheless, the majority repeats the error made by the court of appeals in 1997 when it denied Pope's first attempt to resurrect his direct appeal rights: the majority burdens a pro se criminal defendant with commencing postconviction proceedings on his own and without the assistance of counsel the Sixth Amendment otherwise promises him. When this pro se criminal defendant inevitably committed errors, this court seized upon his inability to correctly follow the rules of appellate procedure to deny him what the Constitution guarantees. Statutes cannot override constitutional rights. "[O]ne principal reason why defendants are entitled to counsel on direct appeal is so that they will not make the kind of procedural errors that unrepresented defendants tend to commit. <u>The Constitution does not permit a state to ensnare an unrepresented defendant in his own errors</u> and thus foreclose access to counsel." <u>Betts v. Litscher</u>, 241 F.3d 594, 596 (7th Cir. 2001) (emphasis added).

2

¶54 After more than twenty years of attempts to reinstate his direct appeal rights following his attorney's failure to initiate an appeal, the State stipulated to affording Pope a direct appeal and the court of appeals ordered Pope's rights reinstated.[2] Pope's constitutionally-guaranteed direct appeal was back on track until his appellate counsel, new to the case, discovered that no transcripts from Pope's trial existed. Court reporters are required to keep trial notes for only 10 years and the notes from Pope's trial were destroyed in 2006. See SCR 72.01(47) (requiring that court reporter notes "shall be retained" for "10 years after the hearing"). Because she had nothing to review, Pope's appellate counsel could not proceed with Pope's constitutionally and statutorily secured right to meaningful appellate review.[3]

---

[2] The State requests the opportunity to assert laches, but the current posture of this case precludes consideration or application of that equitable doctrine, which is available in response to a petition for a writ of habeas corpus but not as a defense to postconviction motions. The court of appeals dismissed Pope's habeas petition following the parties' stipulation to the reinstatement of Pope's direct appeal rights. These appellate proceedings dispose of Pope's postconviction motion for a new trial. Laches may not be asserted in defense of such a motion. See State v. Evans, 2004 WI 84, ¶35, 273 Wis. 2d 192, 682 N.W.2d 784, abrogated on other grounds by State ex rel. Coleman v. McCaughtry, 2006 WI 49, 290 Wis. 2d 352, 714 N.W.2d 900 ("unlike [Wis. Stat.] § 974.06 motions, a habeas petition under [State v.]Knight[, 168 Wis. 2d 509, 484 N.W.2d 540 (1992)] is subject to the doctrine of laches because a petition for habeas corpus seeks an equitable remedy.").

[3] Wis. Const. art. I, § 21(1); Wisconsin Stat. § 808.03(1); State v. Perry, 136 Wis. 2d 92, 99, 401 N.W.2d 748 (1987) (recognizing defendant's right to appeal must be a "meaningful one").

3

¶55 Accordingly, Pope's appellate counsel filed a Wis. Stat. § 809.30 motion for a new trial, which she asserted was the only relief available because no trial transcripts existed, Pope's trial counsel had destroyed his file and had no memory of the case, and 20 years had passed since the trial. The circuit court agreed, vacated Pope's conviction, and granted the motion for a new trial. The court of appeals reversed, applying the partially-missing transcript rule from State v. Perry, 136 Wis. 2d 92, 401 N.W.2d 748 (1987), under which a defendant must allege that a colorable claim of error exists in the missing portion of the trial transcript as a prerequisite to relief. The majority affirms the court of appeals, holding: (1) the Perry rule applies to cases where no trial transcripts exist, see majority op., ¶¶3, 38, 51; (2) Pope is at fault because he "sat on his rights for 14 months" before seeking to restore them, id., ¶¶41-42; (3) Pope is to blame for the unavailability of the transcripts, id., ¶¶3, 39, 50-51; and (4) after being deprived of his constitutional right to effective assistance of counsel for his direct appeal, Pope bore the burden of successfully navigating the justice system pro se and his failure to do so sooner than "14 months" after sentencing means he forfeited all of his rights, id., ¶¶42-44, 46, 50.

¶56 Compounding the calamity of errors that deprived Pope of his direct appeal, the majority casts aside constitutional and statutory rights, misapplies cases, and wrongfully blames Pope for his attorney's errors. Even though a jury found Pope guilty of two counts of first-degree homicide as party to a

4

crime, he nevertheless retains the constitutional and statutory rights our laws secure. Cruz v. Beto, 405 U.S. 319, 321 (1972) ("Federal courts sit . . . to enforce the constitutional rights of all 'persons,' including prisoners[.]"); Turner v. Safley, 482 U.S. 78, 84 (1987) ("[P]risoners retain the constitutional right to petition the government for the redress of grievances . . . and they enjoy the protections of due process[.]" (internal citations omitted)).

¶57 The Constitution guarantees every criminal defendant the right to an attorney for an obvious reason. Attorneys are properly trained in the law and know how to navigate the court system. Nevertheless, the majority absurdly holds convicted prisoners to the same standards as trained lawyers. The Constitution grants criminal defendants the right to a meaningful direct appeal, aided by counsel. The majority pays lip service to these rights but then violates them. According to this court, if appointed counsel abandons his client and forfeits his appeal, then the criminal appellant must proceed on his own, without any counsel at all. If he does not follow the rules closely enough or within whatever unspoken period of time the court believes appropriate for deciphering the rules of appellate procedure, the appellant is simply out of luck. The Constitution does not countenance such a perversion of the criminal justice system.

¶58 The Constitution compels the opposite conclusions the majority reaches: (1) Perry cannot apply when the entire trial transcript is unavailable; (2) Pope did not sit on his rights;

5

(3) Pope is not to blame for the unavailability of the transcripts; and (4) the law does not impose on an imprisoned convict the burden to pursue his own direct appeal pro se because the Constitution guarantees him an effective appellate counsel and a meaningful appeal. I would reverse the decision of the court of appeals and reinstate the circuit court's decision; therefore, I respectfully dissent.[4]

I

¶59 After the circuit court sentenced Pope to two life terms, Pope went to prison with the belief that his trial attorney would initiate his direct appeal. As Pope would later learn, his attorney not only ignored him, but abandoned him completely. Pope signed a form indicating he wanted to pursue postconviction relief and his attorney assured Pope he would take care of filing the Notice of Intent, which would have put

---

[4] This is not a case where a defendant manipulated the system to secure a new trial. Pope signed the SM-33 form on the day he was sentenced stating he would seek relief from the judgment of conviction. Not surprisingly, Pope counted on his counsel to initiate his direct appeal as counsel promised to do. If Pope had instructed his counsel not to file the Notice of Intent to Pursue Postconviction Relief and then intentionally let the 10-year time period for trial transcript retention expire before seeking relief, he would clearly not be entitled to relief. That is not what happened in this case and the majority's assertion that "there would be nothing to stop criminal defendants from sitting on their hands for ten years" in order to get a new trial is absurd. Majority op., ¶36. Our statutory procedures obviously foreclose such tactics. Surely the majority does not mean to insinuate that criminal defense lawyers would intentionally violate appellate procedures or purposefully abandon their clients in order to secure a new trial——the only scenarios under which the majority's fear of the appellate floodgates opening could possibly come to fruition.

the direct appeal in motion. Had Pope's attorney filed that form, Pope would have received his direct appeal and this case would have come to an end. However, Pope's attorney, Michael Backes, did not file that form, nor did he respond to the two letters Pope wrote inquiring about his appeal. Pope tried repeatedly to reach Backes by phone, as did Pope's mother, to ask about the appeal.

¶60 The record suggests that after a year of waiting, Pope gave up on Backes. In August 1997, he wrote to the Wisconsin State Public Defender's ("SPD") office asking about his appeal. The SPD responded that it had not received any paperwork for his appeal. Apparently, Pope then asked the SPD to appoint appellate counsel to represent him because on September 8, 1997, the SPD acknowledged Pope's request for counsel and advised that no Notice of Intent was filed in his case and if Pope wanted an SPD lawyer, Pope would have "to take some steps to reinstate your appeal rights." The SPD explained:

> The applicable appellate rules require the filing of a Notice of Intent to Pursue Postconviction Relief in the trial court within 20 days of sentencing. When that notice is timely filed, appellate counsel is appointed, transcripts are ordered and the appeal proceeds in the normal fashion. If the Notice of Intent is not filed within 20 days of sentencing, it is necessary to ask the court of appeals to extend the time by filing a motion.

> The State Public Defender is willing to appoint counsel to represent you on appeal if the court of appeals extends the time for filing the Notice of Intent in your case. I have no idea why the Notice was not timely filed and therefore you are going to have to explain the reason to the court in a motion to extend the time for filing the Notice.

7

The SPD enclosed two forms to help Pope file his motion seeking reinstatement of his direct appeal.

¶61 Within a week of receiving the SPD letter, Pope filed a pro se motion asking the court of appeals "to reinstate his (appellant's) rights to direct appeal to his criminal conviction." Pope explained that his trial counsel told Pope he "would file a notice of appeal and ensure that the appellant's case was reviewed by the state court of appeals," but Pope "lost all communication with attorney Backes, and no notice of appeal has been filed and no appellate attorney has been appointed." Pope further explained he was "unfamiliar" with how to initiate an appeal "due to [his] lack of knowledge." Nine days later, on September 25, 1997, the court of appeals perfunctorily denied Pope's motion with a single paragraph of analysis and (as the majority acknowledges) a miscounting of the extent of Pope's delay:

> Even assuming the truth of Pope's representations regarding the performance of trial counsel, Pope has failed to provide the court with a sufficient explanation as to why, when counsel failed to initiate postconviction proceedings timely, he did not attempt to commence postconviction proceedings on his own. The court can see nothing in the motion that would warrant a <u>fifteen-month</u> delay in commencing postconviction proceedings. Because no good cause is shown,
>
> IT IS ORDERED that the motion to extend the deadline for filing a notice of intent to pursue postconviction relief is denied.

(Emphasis added). As the majority notes, less than 14 months lapsed between sentencing and the filing of Pope's pro se motion

8

to extend the deadline for filing the Notice of Intent. Majority op., ¶11 n.5.

¶62 After the court of appeals' denial, all subsequent attempts by Pope to restore his direct appeal rights were rejected until he filed a petition for writ of habeas corpus in July 2014.[5] The court of appeals sat on the habeas petition until March 2015 when it ordered the State to respond to Pope's petition. In November 2015, the court of appeals sent Pope's petition to the circuit court with directions to hold a factfinding hearing within 90 days. Notably, the court of appeals' delay between the filing of the habeas petition and the remand to the circuit court for a hearing was <u>16 months——two months longer than</u> Pope's delay while he waited for his attorney to initiate an appeal.

---

[5] In October 1997, Pope filed a Wis. Stat. § 974.06 motion alleging his attorney rendered ineffective assistance. The circuit court denied the motion, saying it was bound by the court of appeals' September 25, 1997 order. Pope filed a notice of appeal in November 1997 and a document construed to be a request for waiver of transcript fees; the court of appeals remanded to the circuit court to determine whether Pope was entitled to free transcripts. The circuit court ruled Pope failed to allege any meritorious claim so he was not entitled to free transcripts. In February 1999, the court of appeals denied Pope's motion to extend the time to file a direct appeal, referring to its earlier order. In March 1999, the court of appeals summarily affirmed the circuit court denial of the § 974.06 motion concluding that Pope waived his appeal. Pope petitioned this court for review and we denied the petition on the ground that it was untimely. In June 2003, Pope filed another motion seeking to extend time, asserting he did not waive his right to direct appeal with counsel but he was completely denied direct appeal counsel. The court of appeals denied Pope's motion as "settled."

9

¶63 Despite the court of appeals order for the factfinding hearing to take place within 90 days, it did not. In February 2016, Pope notified the court of appeals that the circuit court had not complied with the 90-day order. In March 2016, the circuit court sought an extension of time to hold the hearing, which was granted. The factfinding hearing finally occurred in April 2016——21 months after Pope filed his motion. Paradoxically, the majority insists Pope's 14-month delay was unreasonable, see majority op., ¶¶12, 41, 42, 50. In May 2016, the circuit court made findings based on the testimony at the hearing: (1) Pope signed the SM-33 form indicating his desire to file a direct appeal; (2) Backes never filed the Notice of Intent and had other disciplinary actions regarding improper handling of postconviction matters; (3) Pope had been attempting to reinstate his direct appeal rights since 1996;[6] and (4) Pope was credible about the efforts he took to contact Backes.

¶64 In August 2016, the State entered into a Stipulation with Pope that it would jointly move the court of appeals to reinstate Pope's direct appeal rights if Pope dismissed his habeas petition. Pope agreed to do so, and in September 2016,

---

[6] The majority mistakenly dismisses this factual finding based on the "law of Pope's case" from the 1997 court of appeals decision. Majority op., ¶16 n.9. The majority apparently fails to recognize that the 1997 court of appeals decision no longer stands as the "law of the case" because the 2015 court of appeals decision sent Pope's case to the circuit court for factfinding following the filing of his habeas petition. This factual finding is the law of the case unless an appellate court says it was clearly erroneous, which no court, including this one, has done.

10

the court of appeals ordered Pope's direct appeal rights
reinstated.

¶65  At this point it appeared Pope would finally get the
direct appeal the Constitution guarantees him and which he had
been trying to secure for more than 20 years.  However, when his
appellate counsel discovered that all trial transcripts had been
destroyed and Backes had no file or memory of the case, the only
relief available to Pope was to move for a new trial.

¶66  The circuit court found that without a transcript,
there could be no meaningful direct appeal and the only option
was to grant a new trial.  The State appealed the decision and
the court of appeals reversed.  It held that Perry applied and
because Pope did not allege any errors to be found in the
missing "part" of the transcript (which was actually the entire
trial), he was not entitled to relief.  Pope petitioned for
review, which this court granted.

II

¶67  The majority errs in extending Perry to cases where
the entire trial transcript is unavailable.  In Perry, this
court adopted a procedure to use when part of the trial
transcript is missing.  136 Wis. 2d at 104-05.  Initially, the
procedure had been used in a court of appeals case, State v.
DeLeon, 127 Wis. 2d 74, 80-82, 377 N.W.2d 635 (Ct. App. 1985).
Under the Perry/DeLeon procedure:  (1) the defendant must allege
a colorable claim of error in the missing part of the
transcript; (2) if the defendant does so, then the circuit court
must determine whether the missing portion can be reconstructed;

11

(3) if reconstruction is impossible, the circuit court must order a new trial but if reconstruction is possible, the parties may collaborate on reconstructing the record, which the circuit court must then approve after resolving any disagreements between the parties. Perry, 136 Wis. 2d at 100-102; DeLeon, 127 Wis. 2d at 80-82.

¶68 The Perry/DeLeon procedure cannot be applied in a case with no trial transcripts, a situation neither case reflects or contemplates. Both Perry and DeLeon involved cases with only small portions of missing transcript. In DeLeon, merely fifteen minutes of the transcript was missing, the error was discovered not long after the sentencing, and the case was tried to the court——not a jury.[7]  127 Wis. 2d at 76. Under those circumstances, the details of DeLeon's trial were fresh in everyone's minds. More importantly, counsel had other portions of the record to review in order to formulate colorable claims of error. Following the procedure DeLeon adopted prevents insignificant or harmless errors from triggering a new trial. "[N]ot all deficiencies in the record nor all inaccuracies require a new trial." Perry, 136 Wis. 2d at 100.

¶69 In Perry, substantial portions of two mornings of the nine-day trial were missing. 136 Wis. 2d at 95-96. The circuit court heard Perry's motion on the missing transcripts

---

[7] DeLeon suggests that when the time between trial and discovery of the missing transcript is "several months," an accurate reconstruction of the record "may be the exception rather than the rule." State v. DeLeon, 127 Wis. 2d 74, 82, 377 N.W.2d 635 (Ct. App. 1985).

approximately one year after the trial. Id. at 97. Nevertheless, the circuit court that presided over the trial remembered it and found the transcripts that existed "substantially cover[ed] all of the proceedings as [it] recall[ed] them." Id. Nevertheless, this court reversed, granting Perry a new trial. Id. at 104-109. Although this court adopted and applied the DeLeon procedure, it identified significant problems precluding meaningful appellate review when the missing transcripts represented one-eighth of the trial and established the following principles the majority in this case altogether ignores:

- "[T]he right of appeal to the court of appeals is constitutionally guaranteed in the State of Wisconsin" and "the appeal [must] be a meaningful one." Id. at 98-99.

- "In order that the right be meaningful, our law requires that a defendant be furnished a full transcript——or a functionally equivalent substitute[.]" Id. at 99.

- "The usual remedy where the transcript deficiency is such that there cannot be a meaningful appeal is reversal with directions that there be a new trial." Id. (citations omitted).

¶70 In Pope's case, the majority misapplies Perry entirely. The factors that led this court to grant Perry a new trial are even more compelling in Pope's case. In Perry, one year passed since the trial; in this case, Pope's trial occurred more than twenty years ago. Perry had new counsel on appeal,

13

making the transcript appellate counsel's "principal guide." In this case, Pope's appellate counsel has no guide whatsoever. In both Perry and this case, trial counsel was unable to alert appellate counsel to possible errors that may have occurred at trial. However, Perry's colorable claim arose from an assertion of prosecutorial misconduct, which could be readily resolved using existing parts of the record. Perry was able to assert that he needed the prosecutor's closing argument, which was within the missing part. 136 Wis. 2d at 107. In contrast, Pope and his appellate counsel are completely precluded from identifying any colorable claim because they have no transcripts to review.

¶71 Finally, this court in Perry recognized that the "context of the entire record" is important in assessing "whether error is prejudicial or harmless." Id. at 105. In Pope's case, there is no record whatsoever from which to glean any context; as a result, appellate counsel is totally hamstrung in identifying any error, much less assessing whether a particular error may be prejudicial or harmless. Most significantly, the majority in this case disregards "the absolute and constitutional necessity for providing a criminal defendant a transcript that will make possible a meaningful appeal." Id.

¶72 The majority mistakenly interprets this court's statement in Perry that the DeLeon procedure applies to a "broad spectrum of cases" to mean the Perry/DeLeon procedure applies even when NO transcripts exist and when counsel's deficient

14

performance delays the direct appeal for more than two decades post-trial. Majority op., ¶¶30-32. Neither _Perry_ or _DeLeon_ said anything close to the majority's construction of them. "Broad spectrum" cannot possibly encompass an appeal like Pope's, finally permitted more than 20 years post-trial, absent any transcript whatsoever for appellate counsel to review. The majority disregards _DeLeon_'s reliance on _Cole v. United States_, 478 A.2d 277 (D.C. 1984), which shows the _DeLeon_ procedure was never intended to apply in cases with no available transcripts. In _Cole_, two days of trial transcripts were almost entirely reconstructed. The _Cole_ court nevertheless deemed them inadequate: "We are convinced that under the circumstances of this case, the supplemental record on appeal lacks the completeness and the reliability necessary to protect appellant's right to pursue an appeal and this court's obligation to engage in meaningful review."[8]  _Id._ at 287.

¶73 Pope's case stands in stark contrast to _Perry_. With _no_ trial transcripts for Pope's appellate attorney to review, determining whether any claim of error exists is impossible. Because Pope's trial was more than 20 years ago, the memories of

---

[8] Other jurisdictions recognize the indispensability of the transcript. _See, e.g._, _Johnson v. State_, 805 S.E.2d 890, 898 (Ga. 2017) ("An appeal is Johnson's chance to point to the record and overcome those presumptions [that a trial court followed the law and that trial counsel rendered adequate assistance]. He can only do that with an adequate transcript. In this case, where the _whole_ original verbatim transcript of his trial is lost and the narrative recreation is _manifestly_ inadequate, Johnson has not been given a fair opportunity to identify any trial errors and resulting harm or deficient performance by counsel and resulting prejudice.").

15

those who participated are either substantially faded or nonexistent. If only portions of a transcript are missing, the appellant at least has <u>some</u> transcripts to review to allow him to meet the burden. Not so here. The docket in this case shows a total of 21 witnesses and 67 exhibits introduced during a four-day trial. If two days of missing transcripts in <u>Cole</u> and something less than two mornings of missing transcripts in <u>Perry</u> were inadequate for a meaningful appeal, then the absence of any portion of the four-day trial transcript in Pope's case compels the same conclusion and warrants a new trial, as in <u>Perry</u>. The majority's denial of Pope's rights lacks any support under the very law on which the majority bases its decision. In fact, the controlling cases contradict the majority's conclusions.

¶74 This court in <u>Perry</u> recognized the overriding importance of the trial transcript, something the majority in this case utterly ignores:

> [T]he most basic and fundamental tool of [an appellate advocate's] profession is the complete trial transcript, through which his trained fingers may leaf and his trained eyes may roam in search of an error, a lead to an error, or even a basis upon which to urge a change in an established and hitherto accepted principle of law.

<u>Perry</u>, 136 Wis. 2d at 106 (quoting <u>Hardy v. United States</u>, 375 U.S. 227, 288 (1964) (Goldberg, J., concurring)). "[W]here counsel on appeal is new to the case, it is <u>the transcript</u> which must be his <u>principal guide</u>." <u>Perry</u>, 136 Wis. 2d at 105 (emphasis added). <u>Perry</u> noted the handicap under which new counsel operates because "[r]ecollections and notes of trial counsel . . . are apt to be faulty and incomplete." <u>Id.</u> at 106

16

(quoted source omitted). "There is no way appellate counsel can determine if there is arguable merit for the appeal without either having been the trial attorney or reading the transcript." In the Interest of J.D., 106 Wis. 2d 126, 132, 315 N.W.2d 365 (1982) (emphasis added).

¶75 The majority neglects to explain how Pope's appellate counsel could possibly identify a single meritorious issue for the appeal without having been the trial attorney and with no transcript to review. Applying the procedures of Perry and DeLeon in cases with no trial transcripts defies logic and denies a defendant his constitutional right to a meaningful direct appeal. Requiring Pope to allege a colorable claim with no transcripts from the trial constitutes a "failure of the appellate process which prevents a putative appellant from demonstrating possible error" and "a constitutional deprivation of the right to appeal." See Perry, 136 Wis. 2d at 99.

¶76 The majority says "[t]here is nothing exceptional about requiring the appellant to assert a facially valid claim of arguably prejudicial error." Majority op., ¶33. This is certainly true when an appellant has been afforded the effective assistance of counsel for a direct appeal and the trial transcripts——the primary guide for asserting error on appeal—— are available. However, when an appellant has been deprived of those constitutionally-guaranteed rights, requiring him to assert a facially valid claim of arguably prejudicial error without any basis for doing so imposes a condition no appellant could meet. The law affords Pope a new trial but the majority

17

denies him one, thereby perpetuating the trampling of his constitutional rights that began with his counsel abandoning him and the court of appeals looking the other way.

III

¶77 The majority justifies denying Pope a meaningful appeal by blaming him for the results of his attorney's inaction. The majority inaccurately concludes that Pope "sat on his rights for 14 months." Majority op., ¶¶41-42. The record itself refutes this statement. First, the circuit court found that Pope has been trying to reinstate his appeal rights since 1996. This finding is not clearly erroneous. Pope wrote and called his trial counsel multiple times. Pope's mother called Backes multiple times. Perhaps Pope believed Backes initiated the appeal as he promised to do and Pope simply waited to hear the results. Appeals are not resolved overnight and waiting a year before taking action under Pope's circumstances was not unreasonable. The record shows that in August 1997, Pope reached out to the SPD to ask about his appeal. Once the SPD advised Pope what to do, he immediately took action. The majority ignores this record in concluding that Pope "sat on his rights for 14 months."

¶78 Regardless, any missteps Pope made attempting to assert his direct appeal rights resulted from his trial counsel's ineffective assistance. If Backes had filed the Notice of Intent as he promised he would, Pope's appeal would have proceeded in a timely manner with the assistance of appointed appellate counsel. When a "procedural default is the

18

result of ineffective assistance of counsel, the Sixth Amendment itself requires that responsibility for the default be imputed to the State." Coleman v. Thompson, 501 U.S. 722, 754 (1991) (quoting Murray v. Carrier, 477 U.S. 478, 488 (1986)). The Seventh Circuit ably explained why counsel on direct appeal is so important:

> Yet one principal reason why defendants are entitled to counsel on direct appeal is so that they will not make the kind of procedural errors that unrepresented defendants tend to commit. The Constitution does not permit a state to ensnare an unrepresented defendant in his own errors and thus foreclose access to counsel.

Betts, 241 F.3d at 596. The majority ignores these cases in faulting and then penalizing Pope for procedural missteps. The deprivation of constitutionally-guaranteed counsel on direct appeal is properly imputed to the State.

IV

¶79 The majority makes a fundamental factual error that undermines the foundation of the entire opinion: not only does the majority base its "outcome" on "Pope's inaction for 14 months"[9] the majority blames Pope for the destruction of the trial transcripts. The majority says that by waiting until September 1997 to file his first motion, Pope caused the unavailability of the trial transcripts. This statement is patently false. Pope's first motion was filed in 1997 and the trial transcripts did not dematerialize until 2006, by operation of Supreme Court Rule 72.01(47). Even if Pope waited until 2005

---

[9] Majority op., ¶12.

19

to file his first motion, he would not have caused the unavailability of the transcripts.

¶80 Blame for the transcript destruction lies with the court system and the State. See SCR 72.01(47) (requiring that court reporter notes "shall be retained" for "10 years after the hearing"). If the court of appeals had realized in September 1997 that Pope had been deprived of his constitutional rights to effective counsel and a direct appeal, it would have granted Pope's motion and the SPD would have provided appellate counsel. Transcripts would have been ordered in 1997 and available for Pope's direct appeal. The State could have apprehended the same in 1997 and advised the court of appeals to grant Pope's motion. If the courts or the State grasped the deprivation of Pope's constitutional rights during any of Pope's multiple attempts to restore his direct appeal rights, the transcripts could have been obtained. Instead, the courts and the State overlooked Pope's rights until it was too late. It is the court system's errors that caused the unavailability of the transcripts, not the filing of Pope's first motion 14 months after sentencing and nine years before the records retention policy applicable to court reporters resulted in the destruction of the transcripts.

¶81 Inexplicably, the majority repeatedly faults Pope for not ordering the transcript within the 10 years following his trial. Majority op., ¶¶17 n.10, 44, 46. Not surprisingly, the majority neglects to explain how Pope was supposed to identify or track down the correct court reporter, or pay the substantial fees necessary to obtain a four-day trial transcript, or know

20

that the court reporter's notes would be destroyed 10 years after the trial unless he orders the transcript, all without the assistance of counsel. His trial counsel's failure to fulfill his obligations to Pope, who was constitutionally entitled to receive the transcript along with the assistance of counsel to pursue his direct appeal, bears the initial fault for the delays in this case. The court system's subsequent failures to recognize Pope's constitutional rights to counsel, a direct appeal, and a transcript, caused the destruction of the trial transcripts, not Pope.

¶82 Because Pope was not responsible for the unavailability of the transcripts, he should not bear the consequences of their destruction. When "the record is lost through no fault of the aggrieved party, that party should not be made to bear the burden of the loss." Perry, 136 Wis. 2d at 111 (quoting DeLeon, 127 Wis. 2d at 77); see also United States v. Ullrich, 580 F.2d 765, 773 n.13 (5th Cir. 1978). The majority flouts the law by imposing the consequences of the lost transcripts on Pope despite the fault plainly lying elsewhere.

V

¶83 Despite the purely procedural nature of Pope's appeal, the majority nevertheless conveys in excruciating detail the facts underlying Pope's conviction, filling its "Factual Background" section with allegations pulled from the Complaint, explaining it does so because there is no trial transcript. It is improper for this court to recast allegations from the Complaint as "facts" rather than citing evidence actually

21

introduced at trial. Of course, neither this court nor Pope can recount any evidence from the trial because the trial transcripts do not exist. The Complaint cannot accurately substitute for what happened at trial. Because this case was tried to a jury, it cannot be determined whether what was alleged in the Complaint was entered into evidence or whether witnesses testified differently or whether objections to particular questions soliciting the facts the majority recites were sustained.

¶84 The majority speculates regarding what may have been presented as evidence during the trial, which illustrates the impossibility of the task the majority imposes on Pope. Without a transcript, the majority invites Pope and other similarly situated defendants to fabricate colorable claims of error. At least the majority could base its factual recitation on the Complaint. If the Complaint had been destroyed along with the transcripts, the majority would not have been able to write about any facts at all. Pope has no record whatsoever on which to base an asserted colorable claim of error.

VI

¶85 Analogizing Pope's case to the waiver and forfeiture[10] situations recognized in State v. Escalona-Naranjo,[11] Wis. Stat.

---

[10] "Although cases sometimes use the words 'forfeiture' and 'waiver' interchangeably, the two words embody very different legal concepts. 'Whereas forfeiture is the failure to make the timely assertion of a right, waiver is the 'intentional relinquishment or abandonment of a known right.'" State v. Ndina, 2009 WI 21, ¶29, 315 Wis. 2d 653, 761 N.W.2d 612 (quoting United States v. Olano, 507 U.S. 725, 733 (1993)).

[11] 185 Wis. 2d 168, 173, 517 N.W.2d 157 (1994).

§ 974.06 cases, or a defendant's failure to respond in a no-merit appeal demonstrates the majority's profound misunderstanding of criminal appellate procedure. Pope's case is markedly different from each of those situations because Pope asked for but never received his constitutionally guaranteed direct appeal. The forfeiture rules established in Escalona-Naranjo and governing § 974.06 cases typically apply when the defendant already received his constitutional right to his direct appeal or initially decided not to appeal but later changed his mind. The forfeiture rules operate to foreclose postconviction proceedings initiated after a direct appeal or after a convicted defendant decided to forgo an appeal altogether. Those defendants already had an opportunity to raise issues on appeal. Pope never did.

¶86 Likewise, Wisconsin's no-merit procedure supplies no support for this court's deprivation of Pope's constitutional rights. The no-merit procedure is triggered when appellate counsel reviews a defendant's case and concludes that no meritorious issues exist. See Wis. Stat. § 809.32(1)(a). Even then, a defendant has the right to file a response to his attorney's no-merit report and assert any issues he thinks do have merit——and the defendant is entitled to a copy of the transcripts in order to do so. § 809.32(1)(b). Even if the defendant does not file a report in response, his attorney must file a no-merit report if the defendant does not consent to closing the file without one. § 809.32(1)(b). As an additional safeguard for the defendant, whenever a no-merit appeal is

23

taken, the court of appeals must independently review the record to decide whether it agrees with the appellate counsel's no-merit determination. See Anders v. California, 386 U.S. 738, 744-45 (1967); State v. Fortier, 2006 WI App 11, ¶21, 289 Wis. 2d 179, 709 N.W.2d 893. In other words, even when an appellate attorney thinks there are no arguable claims of error to appeal, a defendant's constitutional right to a meaningful direct appeal is honored and protected——by the court.

¶87 In State ex rel. Flores v. State, 183 Wis. 2d 587, 516 N.W.2d 362 (1994), the SPD-appointed appellate counsel reviewed Flores' case and concluded it had no merit. 183 Wis. 2d at 607-608, 618. She met with Flores and told him he had no issues for appeal and then closed the file. Id. at 618-19. This court held that Flores was adequately informed about his rights to appeal and the no merit procedure because he had received a written packet regarding the appellate process. Id. at 614. This court held Flores waived his right to appeal because he did not tell his attorney he disagreed with her about the non-meritorious nature of his case or that he wanted her to file a no merit report, and he did not object to her closing the file. Id. at 618-19. Significantly, we said in Flores "[t]his is not a case in which counsel simply abandoned her client." Id. at 618. In contrast, Pope's counsel did abandon him after Pope made it clear he wanted to appeal. Pope never received the appellate information packet from the SPD because his counsel never filed the Notice of Intent, which would have put Pope on the SPD's radar. Pope told his counsel he wanted to appeal and

24

his counsel said he would take care of it. Trusting his counsel to do exactly what he promised to do cannot be reasonably construed as either a forfeiture or a waiver of his direct appeal.

VII

¶88 "The hard fact is that sometimes we must make decisions we do not like. We make them because they are right, right in the sense that the law and the Constitution, as we see them, compel the result." Texas v. Johnson, 491 U.S. 397, 420-21 (1989) (Kennedy, J., concurring). Undoubtedly many will celebrate——indeed, be relieved by——the result the majority reaches in this case. A person convicted of double homicide remains confined. However, the law does not support the majority's decision in this case; the law contradicts it. Achieving a preferred result should never influence judicial interpretations of the law and can never override constitutional rights. The price of the majority's decision in this case is paid not just by Pope, but by all of the citizens of this State. Pope's conviction stands, unreviewed, at the expense of constitutional guarantees designed by the framers to protect the innocent, not free the guilty. While some may be tempted to deny defendants their fundamental constitutional rights when they have been convicted of heinous crimes, doing so erodes the constitutional rights of all citizens——including the innocent—— by leaving their enforcement to the discretionary impulses of the government at the expense of individual liberty.

25

¶89 When counsel's inexcusable error deprives a criminal defendant of his right to an appeal, the court of appeals should promptly reinstate direct appeal rights. The Constitution commands this. If the court of appeals had granted Pope's first motion, his direct appeal would have proceeded with the assistance of an appellate public defender. In most cases, no prejudicial error is found and judgments of conviction are affirmed. Properly handled, this case would have been over for Pope and for the victims' families decades ago, affording the latter some closure and finality. The court of appeals' early misstep generated 23 years of battles, filings, court hearings, and uncertainty. The people of Wisconsin should be troubled by any conviction or imprisonment that stands at the expense of fundamental constitutional rights. Imprisoning a person without following the rule of law opens the door for the sort of governmental abuses against which the founders sought to insulate the citizens of the United States. The constitutional rights of Wisconsin's citizens cannot be conditioned on the competency of counsel. Because the majority acquiesces to the deprivation of constitutional rights caused solely by the errors of appointed counsel, I respectfully dissent.

¶90 I am authorized to state that Justices ANN WALSH BRADLEY and REBECCA FRANK DALLET join this dissent.